[Cite as *State v. Roulette*, 2011-Ohio-6993.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | Case No. 10CA3364 |
| v. | : | |
| | : | DECISION AND |
| Ezekiel Roulette, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | Filed: December 22, 2011 |

_____

APPEARANCES:

Bryan Scott Hicks, Lebanon, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Joseph L. Hale, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for Appellee.

_____

Kline, J.:

{¶1}    Ezekiel Roulette appeals the judgment of the Scioto County Court of Common Pleas, which convicted him of two felonies and two misdemeanors.  Roulette contends that the trial court erred when it changed its ruling on the admissibility of certain exhibits while the jury was deliberating.  We disagree for two reasons.  First, the trial court was not divested of jurisdiction to revisit its admissibility ruling after the jury retired to deliberate.  And second, Roulette invited any error he now complains of.  Roulette next contends that there was insufficient evidence to support his convictions.  Roulette, however, frames his argument as a claim that his convictions were against the manifest weight of the evidence.  Consequently, we review Roulette's claims to determine (1) whether Roulette's convictions were against the manifest weight of the

evidence and (2) whether there was sufficient evidence to support Roulette's convictions. Because there was substantial evidence upon which the jury could conclude, beyond a reasonable doubt, that Roulette was guilty of the crimes for which he was convicted, we find that Roulette's convictions were not against the manifest weight of the evidence. Thus, there was also sufficient evidence to support Roulette's convictions. Accordingly, we affirm the judgment of the trial court.

I.

{¶2} On the night of June 8, 2009, Roulette, Karrington Martin, Sara Husted, and Mary Helmick (hereinafter "Mary")[1] returned to Portsmouth following a trip to Columbus to acquire crack cocaine. Upon returning to Portsmouth, the group stayed at the home of an acquaintance of Mary's.

{¶3} On the morning of June 9, 2009, Roulette accused Mary of stealing his crack. Mary denied this accusation. However, when Roulette could not find the crack, he hit Mary multiple times. At one point, Roulette hit Mary in the stomach, which caused her to urinate on herself. Mary begged Roulette to stop hitting her. Roulette then told Mary that she would have to pay him $600. Shortly thereafter, Roulette, Martin, Husted, and Mary drove off in Husted's gold Nissan Pathfinder.

{¶4} Mary then called her father, Ed Helmick (hereinafter "Ed"). Initially, Mary asked Ed to pick her up at "Krogers." At that point, Ed drove to the Kroger in Portsmouth. Mary then informed Ed that she was at the Wheelersburg Kroger. Ed then drove to the Wheelersburg Kroger, where he received a phone call from Roulette. Ed testified that "[Roulette] wanted [Ed] to give him 600 bucks or he was going to hurt

---

[1] We refer to Mary Helmick as "Mary" because she has the same surname as another witness in this case, Ed Helmick (i.e., Mary's father).

[Mary]." Tr. at 34. Roulette told Ed that he "didn't care whether he had to put [Mary] on the street, knock her in the head, or beat her ass every day." Id.

{¶5} Roulette then told Ed to give the money to a woman wearing a pink shirt. Shortly thereafter, Martin, who was wearing a pink shirt, walked by Ed's car in the Kroger parking lot. Ed, however, did not give Martin any money. Roulette then called Ed back and threatened to take Mary to Cleveland, where he would force her into prostitution. Ed stalled by explaining that he was going to contact his ex-wife (i.e., Mary's mother) and ask her to help come up with the money. Instead, Ed went to the New Boston Police Department.

{¶6} The New Boston police contacted the Scioto County Sheriff's Department shortly after Ed explained his situation. While Ed was working with law enforcement officials, he continued to have phone conversations with Roulette. Eventually, Roulette and Ed arranged for Ed to give Roulette the money in the parking lot of the New Boston Wal-Mart. Law enforcement officers positioned themselves in the Wal-Mart parking lot while Ed remained at the New Boston Police Department. At some point, Ed learned that Roulette was in a gold Nissan Pathfinder. Soon after learning about the Pathfinder, law enforcement officers surrounded the vehicle and arrested Roulette, Martin, and Husted. Mary's injuries did not appear life threatening, and law enforcement decided not to call an ambulance. Mary, however, did require some medical attention, so a law enforcement official transported Mary to a hospital.

{¶7} A grand jury indicted Roulette on multiple counts related to the incident, and Roulette's case was tried to a jury. The jury found Roulette as follows: not guilty of Kidnapping; guilty of Extortion, a third-degree felony, in violation of R.C. 2905.11(A)(2);

not guilty of Felonious Assault, but guilty of the lesser-included offense of Assault, a first-degree misdemeanor, in violation of R.C. 2903.13; not guilty of Aggravated Robbery, but guilty of the lesser-included offense of Robbery, a second-degree felony, in violation of R.C. 2911.02(A)(2); and guilty of Attempted Theft, a first-degree misdemeanor, in violation of R.C. 2913.02(A)(5) / 2923.02.

{¶8}   Roulette appeals and asserts the following assignments of error: I. "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY OVERTURNING ITS INADMISSIBILITY RULING AND ALLOWING EVIDENCE INTO THE JURY ROOM AFTER THE JURY HAD ALREADY RETIRED TO DELIBERATE." And, II. "THE CONVICTIONS WERE BASED ON AN INSUFFICIENCY OF THE EVIDENCE."

II.

{¶9}   Initially, we will address some errors in the trial court's judgment entry. The entry states, among other things, that Roulette was guilty of Assault, "a misdemeanor of the first degree, in violation of [R.C.] 2903.12(A)." R.C. 2903.12 does not govern misdemeanor Assault. The correct statute is R.C. 2903.13. The jury form lists the correct statute, and the trial court properly instructed the jury on the elements of assault under R.C. 2903.13. Additionally, the entry also states that Roulette was guilty of "Robbery, a felony of the second degree, in violation of [R.C.] 2902.11(A)(2)." The correct statute for Robbery is R.C. 2911.02(A)(2). Similar to the Assault conviction, the jury form for the Robbery count lists the correct statute, i.e., R.C. 2911.02(A)(2), and the trial court properly instructed the jury on the elements of Robbery under that statute. Nevertheless, we remand this case to the trial court to correct these errors in the judgment entry.

III.

{¶10} In his first assignment of error, Roulette claims that the trial court erred when it admitted certain exhibits into evidence that the court had previously ruled were inadmissible. Roulette focuses his argument on the fact that the trial court changed its ruling after the jury retired to deliberate.

{¶11} "'[T]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court.'" *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, at ¶79, quoting *State v. Sage* (1987), 31 Ohio St.3d 173, at paragraph two of the syllabus. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157.

{¶12} The trial court ruled certain photographs were inadmissible as a discovery sanction. In its case in chief, the State introduced photographs of Mary, which depicted Mary's injuries. (As Roulette pointed out at trial, the photographs also depicted marks on Mary's arms consistent with intravenous drug use.) During discovery, the State had notified Roulette that photographs of Husted's Pathfinder were available for Roulette to review. The State, however, did not specifically indicate that the photographs of Mary were available. The trial court determined that, because the State specifically mentioned the automobile photographs but not the photographs of Mary, Roulette was not sufficiently notified of the existence of the photographs of Mary. Therefore, as a discovery sanction, the trial court ruled that the photographs of Mary were inadmissible.

{¶13} While the jury was deliberating, it sent the trial court a request. The jury requested that the trial court allow the jury to review the photographs of Mary. After

consulting with both Roulette and the State, the trial court ruled the photographs were admissible and allowed the jury to review them.

**{¶14}** This case falls squarely within the "invited-error doctrine." "Under the invited-error doctrine, '[a] party will not be permitted to take advantage of an error which he himself invited or induced.'" *State v. Bey*, 85 Ohio St.3d 487, 493, 1999-Ohio-283, quoting, *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, at paragraph one of the syllabus.

**{¶15}** While it deliberated, the jury requested to view "the photos of Mary Helmick's face and arm." Tr. 358. The trial court then asked whether Roulette wanted the court to grant the jury's request. And Roulette's trial counsel stated, "I consulted with Mr. Roulette. We're good. We're okay to let the pictures go up." Id. at 359. The trial court clarified Roulette's position as follows:

**{¶16}** "[Court]: Now you understand that's contrary to my previous ruling.

**{¶17}** "[Def. Counsel]: Yes, sir.

**{¶18}** "[Court]: All right. And you and Mr. Roulette have discussed it and although I've not allowed them to be admitted into evidence, I'll change that, if you desire. I'll change that, allow them to be admitted and then they go up, but I have to have your approval.

**{¶19}** "[Def. Counsel]: Mr. Roulette and I discussed the pros and the cons of it. The possible benefits as well as the possible harm and we're in agreement to let them go up. You can change that ruling.

**{¶20}** "* * *

**{¶21}** "[Court]: Okay, All right, I'll let them go upstairs and my previous ruling is changed now with the consent of both parties."  Id. at 359-360.

**{¶22}** At trial, Roulette obviously recognized that there were benefits to allowing the jury to view the photographs of Mary.  The State noted, on the record, that the photographs were advantageous to Roulette in certain respects.  Specifically, the State indicated that "[Roulette's trial counsel] did comment on the photos to his advantage, that some of the marks [on Mary's arm] were [drug] injection marks."  Id. at 360. Roulette attempted at trial to cast doubt on Mary's credibility based on her drug use. Thus, by approving the trial court's reversal of its earlier ruling on the admissibility of the photographs, Roulette invited the error he now complains of on appeal.

**{¶23}** Roulette, however, argues that the trial court lacked authority to revisit its earlier ruling, and, therefore, Roulette could not have waived the error.  Roulette relies on R.C. 2945.35, which governs the items that may be brought to the jury room during deliberations.  R.C. 2945.35 provides as follows: "Upon retiring for deliberation, the jury, at the discretion of the court, may take with it all papers except depositions, and all articles, photographs, and maps which have been offered in evidence.  No article or paper identified but not admitted in evidence shall be taken by the jury upon its retirement."

**{¶24}** Roulette focuses on the sentence "No article or paper identified but not admitted in evidence shall be taken by the jury upon its retirement" to argue that "[t]he statute gives the trial court no authority to reverse its rulings once the jury has retired." Appellant's Brief at 11-12.  Roulette claims that the trial court "had no jurisdiction or authority" to even consider the jury's request regarding the pictures.  Id. at 12.

**{¶25}** Roulette's arguments are misplaced. "The obvious purpose of [R.C. 2945.35] is the exclusion from the jury room of that evidence which has been ruled inadmissible." *State v. Graven* (1977), 52 Ohio St.2d 112, 113. The phrases "[u]pon retiring for deliberation" and "upon [the jury's] retirement" do not limit the trial court's ability to revisit an evidentiary issue after the jury begins its deliberations. Nothing in the statute divests a trial court of jurisdiction to revisit an evidentiary ruling. Cf. *State v. Callahan* (March 22, 2000), Mahoning App. No. 97 C A 224, quoting *Henry v. U.S.* (C.A. 6, 1953), 204 F.2d 817, 820-21 ("There is no iron-bound, copper-fastened, double riveted rule against the admission of evidence after both parties have rested upon their proof and even after the jury has entered upon its deliberations. Considerable latitude in discretion is vested in the trial judge in this respect.").

**{¶26}** The trial court did not violate the statute because the jury did not view any inadmissible evidence. The trial court determined that the photographs of Mary were inadmissible as a *discovery sanction*. When the jury ultimately reviewed the photographs, the trial court had changed its ruling and deemed them admissible (with Roulette's approval).

**{¶27}** The trial court was not divested of jurisdiction to revisit an evidentiary ruling while the jury was deliberating. Additionally, Roulette invited any error that he now complains of on appeal. Thus, the trial court did not abuse its discretion when it determined that the photographs of Mary were admissible and allowed the jury to review them. Accordingly, we overrule Roulette's first assignment of error.

IV.

**{¶28}**  In his second assignment of error, Roulette argues that his convictions were based on insufficient evidence.  Roulette's argument, however, focuses primarily on the credibility issues of the State's witnesses.  Thus, although Roulette asserts that his convictions were based on insufficient evidence, he frames his argument as a claim that his convictions were against the manifest weight of the evidence.  A sufficiency-of-the-evidence challenge and a manifest-weight-of-the-evidence challenge are "two distinct legal concepts."  *State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597, at ¶29 (citation omitted).  Therefore, we will review Roulette's second assignment of error under both the sufficiency-of-the-evidence standard and the manifest-weight-of-the-evidence standard.  See id.

**{¶29}**  When reviewing a case to determine if the record contains sufficient evidence to support a criminal conviction, we must "'examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'"  *State v. Smith*, Pickaway App. No. 06CA7, 2007-Ohio-502, at ¶33, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.  See, also, *Jackson v. Virginia* (1979), 443 U.S. 307, 319.

**{¶30}**  The sufficiency-of-the-evidence test "raises a question of law and does not allow us to weigh the evidence."  *Smith* at ¶34, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175.  Instead, the sufficiency-of-the-evidence test "'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the

evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Smith* at ¶34, quoting *Jackson* at 319.  This court will "reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact."  *Smith* at ¶34, citing *State v. Thomas* (1982), 70 Ohio St.2d 79, 79-80; *State v. DeHass* (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus.

{¶31}  "Even when sufficient evidence supports a verdict, we may conclude that the verdict is against the manifest weight of the evidence, because the test under the manifest weight standard is much broader than that for sufficiency of the evidence." *Smith* at ¶41.  When determining whether a criminal conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."  *State v. Eskridge* (1988), 38 Ohio St.3d 56, at paragraph two of the syllabus.  See, also, *Smith* at ¶41.  We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted."  *Smith* at ¶41, citing *State v. Garrow* (1995), 103 Ohio App.3d 368, 370-371; *Martin*, 20 Ohio App.3d at 175.  But "[o]n the trial of a case, * * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts."  *DeHass* at paragraph one of the syllabus.

{¶32}  "When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that

sufficient evidence supports the conviction." *Puckett* at ¶34, citing *State v. Pollitt*, Scioto

App. No. 08CA3263, 2010-Ohio-2556, at ¶14. "'Thus, a determination that [a]

conviction is supported by the weight of the evidence will also be dispositive of the issue

of sufficiency.'" *State v. Lombardi*, Summit App. No. 22435, 2005-Ohio-4942, at ¶9,

quoting *State v. Roberts* (Sept. 17, 1997), Lorain App. No. 96CA006462.

## A. Assault

**{¶33}** Roulette was convicted of Assault in violation of R.C. 2903.13(A), which

provides, in part: "No person shall knowingly cause or attempt to cause physical harm to

another[.]"

**{¶34}** Roulette challenges his assault conviction based on the credibility of the

State's witnesses. Roulette notes that Mary is a drug abuser who admitted to having

prostituted herself in the past to support her habit. Additionally, at the time of trial, Mary

was incarcerated on a theft-from-the-elderly charge. Roulette also noted that there

were inconsistencies in Mary's testimony regarding certain aspects of the events in

question. For example, Mary's testimony regarding what the group did after returning

from Columbus on the night before the incident differed from the testimony of other

witnesses.

**{¶35}** Roulette also argues that the testimony of both Martin and Husted is

tainted by their desire to avoid lengthy prison sentences. Martin was initially charged

with multiple crimes for her involvement in this case, but she pled guilty only to extortion

in exchange for her testimony against Roulette. Prior to her plea deal, Martin faced

forty-three years in prison. Similarly, Husted was charged with multiple crimes for her

role in this incident, and she faced forty-three years in prison.  Like Martin, Husted pled guilty only to extortion under a plea deal.

**{¶36}**  According to Roulette, the credibility issues of Mary, Martin, and Husted undermine the legitimacy of Roulette's assault conviction.  We note that Roulette also argues that "[w]ithout the photographs [of Mary], all you are left with is a mishmash of testimony from witnesses who on their own are simply not credible enough to put the greater amount of evidence on the State's side."  Appellant's Brief at 16.  Roulette asserts that, other than the testimony of witnesses with credibility problems, the photographs are the only tangible evidence that Roulette caused Mary physical harm.  First, as discussed in Roulette's first assignment of error, the trial court did not err when it admitted the photographs of Mary.  Second, even without the photographs, there was substantial evidence to convict Roulette of assault, notwithstanding the credibility issues of the State's witnesses.

**{¶37}**  Roulette ignores the consistency of the testimony regarding the elements of Roulette's assault charge.  Mary testified that, on the morning of June 9, 2009, she awoke to Roulette screaming and accusing her of stealing his crack.  Roulette continued to look for his crack, but he could not find it.  Mary then testified as follows: "First [Roulette] hit me and I fell down on the bed and then he continued to hit me and then I peed on myself because he hit me so hard in the stomach.  And then he stopped for a minute because I was begging him to stop[.] * * * [Roulette] stopped for a minute and kept asking me to find * * * it or he was going to keep doing it, keep beating on me.  And I just kept saying I don't know where it's at, I don't know where it's at.  So he tore up the bedroom looking and then he started to hit on me again.  He punched me a few

times in the face and I fell on top of [a] dog and the dog bit me and it just like – it made a little place on my face, and then where [Roulette] punched me, it made it worse. And I peed on my self again." Tr. at 150-151.

**{¶38}** Mary testified that Roulette then left the house for a few minutes and that he told Martin to watch Mary. Mary testified that when Roulette returned, he hit her again. Mary also testified that after she fell to the ground, Roulette kicked her in the head and stomach. Finally, Mary testified that she asked Roulette how much money she needed to get "to make him quit[,]" and she offered to call her parents to get money. Id. at 152.

**{¶39}** Martin's testimony and Husted's testimony corroborate Mary's version of events. Martin testified that she slept in the Pathfinder the night before, and at some point in the morning, she entered the house. Martin testified that she saw Roulette and Mary arguing. Martin then testified that she saw Roulette "hit [Mary's] ear and the dog bit her on her eye." Id. at 229. Martin testified that she noticed that Mary's crotch was wet, which was consistent with someone urinating on herself.

**{¶40}** Martin also testified that when the argument began, Husted was showering. Martin testified that after Husted came out of the shower, Martin and Husted then went outside to the Pathfinder. While Martin and Husted were in the Pathfinder, Martin testified that she could hear Mary screaming and yelling for Roulette to stop.

**{¶41}** Husted testified that, on the morning of June 9, she was showering and that when she came out of the shower, Roulette and Mary were arguing about money and drugs. Husted went out to the Pathfinder to smoke a cigarette, and she testified that she "contemplat[ed] whether to leave or what to do." Id. at 258. Husted testified

that she considered leaving because she heard Mary screaming, "Stop it." Id. Husted also testified that "[Mary] was just screaming like she was being * * * hurt." Id. When Mary eventually came out of the house, Husted testified that she noticed that Mary had blood on her shirt.

{¶42} We reiterate that the "weight to be given the evidence and the credibility of the witnesses are primarily for the [jury.]" *DeHass,* at paragraph one of the syllabus. Based on the testimony of the State's witnesses, there is substantial evidence upon which the jury could reasonably have concluded, beyond a reasonable doubt, that Roulette "knowingly cause[d] or attempt[ed] to cause physical harm to" Mary. R.C. 2903.13(A). Thus, Roulette's assault conviction is not against the manifest weight of the evidence. See *Eskridge* at paragraph two of the syllabus. Accordingly, there is also sufficient evidence to support Roulette's assault conviction. See *Lombardi* at ¶9.

## B. Extortion

{¶43} Next, we consider Roulette's challenge to his conviction for extortion in violation of R.C. 2905.11(A)(2). That statute provides: "No person, with purpose to obtain any valuable thing or valuable benefit or to induce another to do an unlawful act, shall do any of the following: * * * Threaten to commit any offense of violence[.]"

{¶44} Roulette argues that the State failed to show that Roulette threatened to commit an offense of violence. Essentially, Roulette argues that the only evidence of a threat of violence is Ed's testimony that Roulette threatened, over the phone, that he would kill Mary if Ed did not give Roulette $600. Roulette argues that Mary, Martin, and Husted testified that Roulette only threatened that he would force Mary into prostitution

if Ed failed to pay.  Roulette asserts that although forcing someone into prostitution "is despicable, [] it is not a crime of violence."  Appellant's Brief at 17.

**{¶45}**  Even assuming that forcing someone into prostitution is not a crime of violence, there was substantial evidence that Roulette threatened an offense of violence.  Mary contacted Ed and told him that she needed him to pick her up at "Krogers."  After Ed mistakenly drove to the Portsmouth Kroger, Mary informed him that he needed to go to the Kroger in Wheelersburg.  While Ed waited in the parking lot of the Wheelersburg Kroger, Roulette called him.  Ed testified that Roulette "wanted me to give him 600 bucks or he was going to hurt my daughter."  Tr. at 34.  When asked how Roulette said he was going to hurt Mary, Ed stated that Roulette "didn't care whether he had to put her on the street, knock her in the head, or beat her ass every day."  Id.  Ed testified that those were Roulette's "exact words."  Id.  Ed also testified that Roulette "said he would kill [Mary]."  Id. at 40.

**{¶46}**  Additionally, Roulette's argument overlooks Martin's testimony.  Roulette argues that Mary, Martin, and Husted testified that Roulette threatened only to force Mary into prostitution.  Martin, however, also testified that she overheard Roulette tell Ed that Roulette would "throw [Mary] in the water."  Id. at 235.  Specifically, Martin testified that Roulette told Ed that Roulette "was going to take that bitch swimming if you don't get my money."  Id.  The jury could reasonably infer that Roulette's statement that he would take Mary "swimming if you don't get my money" constituted a threat of violence.

**{¶47}**  Thus, there is substantial evidence upon which the jury could reasonably have concluded, beyond a reasonable doubt, that Roulette, "with purpose to obtain

[$600,] * * * [t]hreaten[ed] to commit an[] offense of violence[.]" R.C. 2905.11(A)(2).

Therefore, Roulette's extortion conviction is not against the manifest weight of the

evidence. See *Eskridge* at paragraph two of the syllabus. Accordingly, there is also

sufficient evidence to support Roulette's extortion conviction. See *Lombardi* at ¶9.

### C. Attempted Theft

**{¶48}** Roulette was convicted of attempted theft in violation of R.C.

2913.02(A)(5). R.C. 2913.02(A)(5) provides that "[n]o person, with purpose to deprive

the owner of property or services, shall knowingly obtain or exert control over either the

property or services in any of the following ways: * * * By intimidation." This statute

does not address "attempted" theft specifically. However, R.C. 2923.02(A) governs

"attempt," and it provides as follows: "No person, purposely or knowingly, and when

purpose or knowledge is sufficient culpability for the commission of an offense, shall

engage in conduct that, if successful, would constitute or result in the offense."

**{¶49}** The Revised Code does not include a statutory definition of "intimidate."

In the absence of a statutory definition, we give the term its "common, everyday

meaning." See *State v. Dorso* (1983), 4 Ohio St.3d 60, 62. The dictionary defines

"intimidate" as "to make timid or fearful **:** inspire or affect with fear : FRIGHTEN[.]"

Webster's Third New International Dictionary (2002) (caps sic). This definition is

consistent with the trial court's definition in its jury instructions. See Tr. at 349 (stating

that "[i]ntimidation means to frighten, scare or bully").

**{¶50}** Roulette's conduct constituted intimidation. Roulette told Ed that if Ed did

not pay Roulette $600, then Roulette would force Ed's daughter into prostitution and

that Roulette would "knock her in the head" and "beat her ass every day." Id. at 34. Ed

also testified that Roulette threatened to kill Mary. Additionally, Martin overheard Roulette tell Ed that Roulette would throw Mary in the water. The evidence demonstrates that Roulette intended to make Ed fearful. Ed sought help from the police when he realized that Mary might be in danger. Several law enforcement officials testified that Ed appeared distraught as a result of his conversations with Roulette. Consequently, there was substantial evidence that Roulette knowingly attempted to deprive Ed of $600 through intimidation. Thus, Roulette's attempted theft conviction is not against the manifest weight of the evidence. See *Eskridge* at paragraph two of the syllabus. Accordingly, there is also sufficient evidence to support Roulette's attempted theft conviction. See *Lombardi* at ¶9

## D. Robbery

**{¶51}** Finally, by virtue of his other convictions, Roulette's robbery conviction, in violation of R.C. 2911.02(A)(2), is not against the manifest weight of the evidence. R.C. 2911.02(A)(2) provides that "[n]o person, in attempting or committing a theft offense * * *, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another[.]"

**{¶52}** As detailed above, Roulette was guilty of attempted theft in violation of R.C. 2913.02. A violation of R.C. 2913.02 constitutes a "theft offense" under the robbery statute. See R.C. 2911.02(C)(2) & R.C. 2913.01(K)(1). And in attempting to commit a theft offense against Ed, Roulette threatened to inflict physical harm on Mary.

**{¶53}** The defendant need not threaten the victim of the underlying theft offense with physical harm to be guilty of robbery under R.C. 2911.02(A)(2). In *State v. Lynch* (May 13, 1993), Montgomery App. No. 13312, the court analyzed a robbery conviction under a provision of R.C. 2911.02(A), which provided, in part, as follows: "No person, in

attempting or committing a theft offense, * * * *shall use* or threaten the immediate use of *force against another.*" (Emphasis sic). The court held that "[i]t is clear under the law in Ohio, * * * that 'the person against whom force is used or threatened need not be the victim of the theft itself.'" Id., quoting (Committee Comment to H 511). "The statute itself (R.C. 2911.02) [prohibits] the use of force 'against another,' who could be anyone." Id.

**{¶54}** As stated above, R.C. 2911.02(A)(2) prohibits "[i]nflict[ing], attempt[ing] to inflict, or threaten[ing] to inflict physical harm on another." And the person against whom physical harm is threatened need not be the victim of the theft itself. See *Lynch*. Consequently, because there was substantial evidence that Roulette threatened to inflict physical harm against Mary while he committed a theft offense against Ed, Roulette's robbery conviction is not against the manifest weight of the evidence. See *Eskridge* at paragraph two of the syllabus. Accordingly, there is also sufficient evidence to support Roulette's robbery conviction. See *Lombardi* at ¶9.

E. Conclusion

**{¶55}** We conclude that there is substantial evidence to support each of Roulette's convictions. Therefore, none of Roulette's convictions is against the manifest weight of the evidence. Consequently, there is sufficient evidence to support to support each of Roulette's convictions. Accordingly, we overrule Roulette's second assignment of error.

V.

{¶56}  Having overruled both of Roulette's assignments of error, we affirm the judgment of the trial court.  However, we remand this case to the trial court to correct the errors in its judgment entry as detailed above.

**JUDGMENT AFFIRMED AND CAUSE REMANDED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED AND THE CAUSE BE REMANDED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.


Harsha, P.J. and McFarland, J.: Concur.

For the Court


BY:_____
      Roger L. Kline, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**