[Cite as *State v. Young*, 2013-Ohio-3418.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 12CA14 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| GLENN F. YOUNG, JR., | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | **Released: 07/26/13** |

_____
APPEARANCES:

David A. Sams, West Jefferson, Ohio, for Appellant.

James E. Schneider, Washington County Prosecutor, and Alison L. Cauthorn, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for Appellee.
_____

McFarland, P.J.

{¶1} Glenn F. Young, Jr., appeals his conviction in the Washington County Court of Common Pleas after a jury found him guilty of one count of theft of a dangerous drug, a violation of R.C. 2913.02(A)(1)(2)(3) and (B)(1)(6). On appeal, Young contends (1) the trial court erred by admitting hearsay; (2) the trial court erred in admitting Appellant's statements in the absence of a corpus delicti; (3) the judgment is based upon insufficient evidence and is otherwise against the manifest weight of the evidence; and, (4) Appellant was denied effective assistance of counsel.

Upon review, we find the trial court's admission of Carrie Roush's alleged hearsay statement was not error. Here there was sufficient evidence to establish the corpus delicti of the crime in this matter and, as such, the trial court did not err in subsequently admitting Appellant's tape-recorded confession. We also find the jury's verdict was based on sufficient evidence and was also not against the manifest weight of the evidence. Finally, we find Appellant was not denied effective assistance of counsel. Accordingly, we overrule all assignments of error and affirm the judgment of the trial court.

FACTS

{¶2} Glenn F. Young, Jr., was indicted for theft of a dangerous drug, a violation of R.C. 2913.02(A)(1))(2)(3) and (B)(1)(6) by the Washington County Grand Jury on April 29, 2011. The indictment specifically alleged theft of 25 pills containing Hydrocodone and approximately 10 Cyclobenzaprine pills. Appellant's mother, Clara M. Young, was the alleged victim of this crime. Appellant proceeded to a jury trial on January 18, 2012.

{¶3} At trial, the State presented testimony from Carrie Roush, Appellant's sister. She testified her mother lived in an apartment in Beverly, Ohio in early 2011. Ms. Roush testified her mother had just returned to her apartment after being away for a month after knee replacement surgery in

late January 2011. Ms. Young had been in a nursing home three weeks. Ms. Roush assisted her mother in obtaining her medication, a pain medication, a muscle relaxant, and her regular medications, from the B&W Pharmacy on or about February 18, 2011.  Ms. Young then stayed with her daughter a week after obtaining the prescriptions on the 18th.   Ms. Roush testified during that time, her mother resisted taking her Vicodin as much as possible. At the time Ms. Young returned to her apartment in the latter part of February 2011, she still had nearly the entire prescription of pain medication, a 60- day supply.  On the  Sunday or Monday following Ms. Young's return to her apartment, Carrie Roush received a phone call from her mother that "some of her pills were missing." Ms. Roush testified she then went to her mother's apartment, counted her pills, and noticed approximately half of the pills were missing.  She advised contacting the police.   Carrie Roush further testified to her knowledge, the only people present at her mother's apartment during the relevant time period, (the Friday her mother returned to her apartment until the Sunday or Monday Ms. Roush assisted her mother in counting the pills), were her brother, Appellant Glenn F. Young, Jr., and his ex-wife Aimee Young.

{¶4}  On cross-examination, Carrie Roush testified she did not actually see Appellant take the pills. Ms. Roush also testified her mother had

anxiety attacks when her children were in a fight or her grandchildren were "back-talking."   Ms. Roush acknowledged her mother's memory was questionable, and there had been other instances of her making accusations against Appellant.  Ms. Roush testified her brother's personality was to "fight back" against an accusation. On redirect, Ms. Roush testified the missing pills were never found. [1]

{¶5}  Clara M. Young did not testify at trial.  The State played a brief recorded telephone conversation between Appellant and his mother dated March 3, 2011. Prior to introducing the recorded statement, defense counsel objected on the basis that (1) there had not been enough evidence established at trial to establish a corpus delicti, and, (2) Ms. Young's statement was testimonial hearsay which a limiting instruction would not cure. The trial court ruled there was sufficient evidence to establish a corpus delicti.  The trial court also ruled the recording would be admissible with a limiting instruction that Ms. Young's statements were admissible only to give context to the statements made by the defendant.  The relevant portion of the transcript of the recorded statement is as follows:

{¶6}  Glenn Young, Jr.:   I got your messages this morning.

---

[1] Ms. Roush referenced "pain medication" and "pills" in her testimony.  She never used the terms "Vicodin" or "Hydrocodone." She responded to questions from the prosecuting attorney regarding "Vicodin."  Ms. Roush's only testimony regarding cyclobenzaprine referenced in the indictment was that she "picked up her mother's medications," which included a "muscle relaxant."

Clara Young:      Yea, I was just kinda wondering why you had to take those pain pills Bud.[2]

Glenn Young, Jr.;  Huh?

Clara Young:      I'm wondering why you got in there and took my pain pills.

Glenn Young, Jr.:  I only took 5 of them.

Clara Young:      (Unintelligible) you took more than 5, because I only used 5 of them and there are 30 left and that means you took 25.

Glenn Young, Jr.:  No I didn't.

Clara Young:      Glenn Young Jr., there's nobody else in this world been in my house, since I brought them pills from Sis's.

Glenn Young, Jr.:  I'll get them and bring them back to you.

Clara Young:      Huh?

Glenn Young, Jr.:  I'll buy some and bring them back to ya.

Clara Young;      I don't want you to buy some.  I want to know why you took them?

Glenn Young Jr.:  Because I needed them.  You never gave them to me when I asked.

Clara Young:      Well maybe if you would have asked I would have gave you one, but you didn't need to steal from me.

Glenn Young Jr.:  Well what (unintelligible)

Clara Young:      And the same thing with the Flexural (sic).

Glenn Young Jr.:  Yea, Well (sic), I didn't take the Flexural (sic).

---

[2] Appellant's nickname is "Bud" or "Buddy." He testified Carrie Roush's nickname is "Sissy."

Clara Young:         O.k. So, why did you take the pain medicine?

Glenn Young Jr.:    Because I needed them.

Clara Young:         Like I said nobody has been in this apartment but you, so I knew it had to be you.

Glenn Young Jr.:    I know who it is, I will bring them back to you.

**{¶7}** The final State's witness was Patrolman Larry Freed. Patrolman Freed testified he made contact with Clara Young on March 3, 2011, as part of his duties with the Beverly Police Department. He had been advised by Chief Sams that pills had been stolen from her residence. He went to Clara Young's apartment to assist her in recording a phone conversation with her son. He did not tell Ms. Young what to say during the conversation. He testified he provided a complete copy of the conversation to the prosecuting attorney's office and to Chief Sams, who was investigating the complaint. He testified nothing was edited or removed from the conversation. At this point in the trial, the State offered the tape into evidence. Defense counsel renewed his objection to the tape and requested a limiting instruction. The limiting instruction was as follows:

> Ladies and gentleman, you listened to a tape, or at least a recording of an alleged conversation between Clara Young and Glenn Young, Jr. Clara Young's statements on the CD are not offered for the truth of those statements—that is, they're not offered to prove the assertions made by Mrs. Young, in that tape. They are admissible only to provide context for Mr.

Young's replies. So, the information that—that she provided, accusations that she made, statements that she made, are not evidence of those and you are to disregard them as such. The only reason you heard them, was so that you would have the context in which to understand the statements allegedly made by Mr. Young.

**{¶8}** On cross-examination, Patrolman Freed testified he never looked at the pill bottle, checked for fingerprints on the bottle, or took photos of the bottle. He testified it was Chief Sams' suggestion to record a phone conversation and try to get Appellant to admit guilt.

**{¶9}** At this point in trial, counsel for the parties stipulated that Clara Young's medication contained Hydrocodone, a dangerous drug as defined in R.C. 4729.02. [3] The State offered the tape-recorded conversation as Exhibit A, and the transcript of the recorded conversation as Exhibit B, into evidence. The exhibits were admitted and the State rested. Defense counsel made a Crim.Rule 29 motion for acquittal based on insufficient evidence. The motion was denied.

**{¶10}** The defense first called Aimee Young ("Aimee"), Appellant's ex-wife, with whom he continued to have a close relationship. In early 2011, Appellant and Aimee were living in a camper in Meigs County, Ohio. Aimee testified she worked at a gas station, Appellant was unemployed, and

---

[3] We note R.C. 4729.02 is entitled "State Board of Pharmacy." We presume the stipulation should have cited 4729.01 entitled "Pharmacists, dangerous drugs definitions."

finances were "difficult." Appellant's mother invited them to stay so they went to her apartment on or about February 26, 2011. Aimee was unaware of Ms. Young's recent surgery or that Ms. Young had medications. Aimee also testified Appellant's mother had made other accusations against him in the past.

{¶11} On cross-examination, Aimee acknowledged Appellant and she moved to Ravenswood, West Virginia after the allegations of theft surfaced but returned to Ms. Young's apartment 2-3 weeks prior to the trial. Aimee testified Ms. Young was emotional, crying and upset at the thought of having to testify against her son. Aimee also testified Appellant admitted to taking 5 pills because did not want to argue with his mother and was simply trying to appease her.

{¶12} The next defense witness was Chief of Police Mark Sams of the Beverly Police Department. Chief Sams testified Patrolman Freed was no longer with the department. Chief Sams testified he took the initial report and spoke with the victim on a couple of occasions. He also talked to Carrie Roush. Chief Sams testified he did not photograph or collect finger prints of the pill bottle. He did not collect the bottle or count the pills. Chief Sams verified it was his idea to have the victim contact Appellant and record the conversation. On cross-examination, Chief Sams testified he never saw

evidence of Ms. Young's alleged mental infirmities. He acknowledged she was upset and angry when they spoke.   He testified he saw the victim and her daughter counting the pills and was satisfied that pills were missing.

{¶13}  Appellant was the final witness. He testified his father passed away in 2002.  Appellant testified he knew his mother was in a nursing home and at his sister's house after the knee surgery.  Appellant corroborated the previous testimony about his mother's tendency to make accusations against him.[4]

{¶14}  Appellant gave testimony explaining the tape-recorded conversation with his mother.  He testified he was lying when he told her he took five pills to "smooth things over." He testified that if he had denied the accusation, it would have been an "all-out brawl," and his mother may have "gone to her grave mad" at him.  Appellant testified he was tired of fighting and arguing with his only surviving parent.   He testified he was staying with his mother at the time of trial in an effort to make amends.

{¶15}   The jury subsequently found Appellant guilty.  He was sentenced on February 29, 2012. This timely appeal followed.

---

[4] The substance of the accusations referenced by Carrie Roush , Aimee Young, and Appellant was that Appellant had been accused of hurting his mother's bird and stealing gas cards.  There was also testimony about a missing food stamp card, misplaced insurance card, and misplaced cell phone.

ASSIGNMENTS OF ERROR

I. THE DEFENDANT-APPELLANT WAS DENIED A FAIR
TRIAL BY THE ADMISSION OF INADMISSIBLE
HEARSAY CONTRARY TO OHIO LAW AND THE STATE
AND FEDERAL CONSTITUTIONS.

II. THE TRIAL COURT ERRED IN ADMITTING THE
STATEMENTS OF THE DEFENDANT-APPELLANT IN
THE ABSENCE OF A CORPUS DELICTI.

III. THE JUDGMENT IS BASED UPON INSUFFICIENT
EVIDENCE AND IS OTHERWISE AGAINST THE
MANIFEST WEIGHT OF THE EVIDENCE CONTRARY TO
OHIO LAW AND THE STATE AND FEDERAL
CONSTITUTIONS.

IV. THE DEFENDANT-APPELLANT WAS DENIED THE
EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO
THE STATE AND FEDERAL CONSTITUTIONS.

ASSIGNMENT OF ERROR ONE

{¶16}  Appellant contends he was denied a fair trial by the

admission of inadmissible hearsay contrary to Ohio law and the State and

Federal Constitutions.  Specifically, Appellant argues Carrie Roush's

statement "I got a phone call from my mom that some of her pills were

missing" should not have been admitted.  At trial, Clara M. Young did not

testify. She was an unavailable declarant and defense counsel had no

opportunity to cross-examine her regarding her out-of-court statement to her

daughter.  These facts suggest the statement is hearsay.  Appellee argues the

statement falls into one of the recognized exceptions to the hearsay rules.

Appellee counters the statement was offered to explain the personal knowledge and subsequent actions of Carrie Roush. Appellant failed to object to introduction of the statement at trial. Therefore, we review the alleged error under the standard set forth regarding plain errors.

## A. STANDARD OF REVIEW

{¶17} Failure to object to an alleged error waives all but plain error. *State v. Keeley,* 4th Dist. No. 11CA5, 2012-Ohio-3564, 2012 WL 3194355, ¶ 28. Notice of CrimR. 52(B) plain error must be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Rohrbaugh,* 126 Ohio St.3d 421, 934 N.E.2d 920, 2010-Ohio-3286, at ¶ 6; *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), at paragraph three of the syllabus. To find plain error, the outcome of trial clearly would have been otherwise. *State v. McCausland,* 124 Ohio St.3d 8, 918 N.E.2d 507, 2009-Ohio-5933, at ¶ 15; *State v. Braden,* 98 Ohio St.3d 354, 785 N.E.2d 439, 2003-Ohio-1325, at ¶ 50.

{¶18} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court[.]" *State v. Haines,* 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, at ¶ 50, citing *State v. Robb,* 88 Ohio St.3d 59, 68, 2000-Ohio-275, 723 N.E.2d 1019. An abuse of discretion

connotes more than an error of judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakmore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶19} Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." A witness is barred from testifying as to the statements made by another only when the statement is offered to prove the truth of the matter asserted in the statement, and only where the statement falls outside of any exceptions to the rule against hearsay as set forth in Evid.R. 803 and 804. See *State v. Davis,* 62 Ohio St. 3d 326, 344, 581 N.E.2d 1362 (1991). Evid.R. 802 contains the general prohibition against the admission of hearsay and provides: "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."

{¶20} An out-of-court-statement offered to show why a witness acted in a particular manner is not hearsay. *State v. Maurer,* 15 Ohio St.3d 239, 262-263, 473 N.E.2d 768 (1984); see, also, *State v. Messer,* 107 Ohio App.3d 51, 57, 667 N.E.2d 1022(1994). A trial court has broad discretion to

determine whether a declaration should be admissible under the various exceptions to the hearsay rule. *State v. Rohdes,* 23 Ohio St.3d 225, 229, 492 N.E.2d 430 (1986), disapproved on other grounds by *State v. Kidder,* 32 Ohio St.3d 279, 513 N.E.2d 311 (1987).

## B.  LEGAL ANALYSIS

{¶21}  In this matter, Carrie Roush testified she picked up her mother's prescription for pain medication on February 18th.  Her mother, who then stayed with her a week, resisted taking her Vicodin and had nearly an entire 60-day supply with her when she returned to her apartment the following week.  This testimony constitutes personal knowledge of her mother's ownership of the pills and the number of pills in her prescriptions.  Thus, Ms. Roush's statement "I received a phone call from my mom that some of her pills were missing" assisted in explaining the context of Ms. Roush's subsequent observations and behavior of going to her mother's home, counting the pills, and urging her mother to call the police.   This type of out-of-court statement is similar to that in *State v. Spires,* 4th Dist. No. 10CA10, 2001-Ohio-3661, 2010 WL 3107736.

{¶22}  In *Spires,* Appellant was convicted of various counts of burglary and breaking and entering.  On appeal, one of the assignments of error presented was the trial court committed plain error in permitting

hearsay to be entered into the record. At issue was a witness's testimony that she "received a call at work from her mother informing her that her house alarm was going off." Appellant argued the statement was inadmissible hearsay. The State contended the statement was not offered for the truth of the matter asserted but rather for the effect on the listener, to show why she went home and discovered items stolen. We agreed, citing *State v. Wente* (8th Dist. No. 85501, 2005-Ohio-4825 at ¶ 8-10 (statement by burglary victim that she received a call from her mother informing her that her house had been broken into was not offered for the truth of the matter asserted and therefore was not inadmissible hearsay).

**{¶23}** In this instance we find no error, let alone plain error. We affirm the trial court's ruling and overrule the first assignment of error.

ASSIGNMENT OF ERROR TWO

{¶24} Appellant also contends the trial court erred in admitting his tape-recorded statements, which amount to a confession, in the absence of a corpus delicti. At trial, the State played a tape-recording for the jury. Carrie Roush identified the voices on the recording as Appellant's and their mother's. In the recording, Appellant is heard admitting to his mother that he took five of her pain pills. Appellant objected to the admission of this evidence and argued the tape-recorded conversation established the corpus

delicti in and of itself, and there had not been enough evidence at trial to establish a crime had been committed to allow Appellant's confession on the tape-recording. Citing *Crawford v. Washington,* 541 U.S. 36, 124 S. Ct. 1354 (2004), Appellant further argued Ms. Young's statements on the tape-recording were hearsay.

**{¶25}** The trial court found that as to the corpus delicti rule, there was sufficient evidence to permit the tape-recorded confession to be admitted. The court further found there was no *Crawford* problem as to the mother's statements as she was not told what to say by law enforcement and no problem as to Appellant's statements as he was not in custody or making a testimonial statement. However, the court issued the limiting instruction previously set forth in our statement of facts as to the mother's statements on the tape-recording. We begin our analysis of this assignment of error with a review of the law pertinent to the corpus delicti rule.

## A. STANDARD OF REVIEW

**{¶26}** We review a trial court's decision as to whether the state established the corpus delicti of a crime under a manifest weight-of-the-evidence standard. See *In re W.B. II*, 4th Dist. No. 08CA18-2009-Ohio 1707, 2009 WL 961500, at ¶31 and 32. Thus, we will uphold the trial court's decision as long as the record contains some competent and credible

evidence independent of the defendant's confession to establish that a crime

occurred.  See, e.g., *State v. Maranda,* 94 Ohio St. 364, 114 N.E. 1038

(1916), paragraphs one and two of the syllabus; *W. B.* at ¶ 32.

{¶27}  The decisions in *W.B.* and *State v. Puckett,* 191 Ohio App.3d

747, 947 N.E.2d 730 (4th Dist.2010) contain detailed explanation of the

corpus delicti requirement:

> The corpus delicti of a crime is essentially the fact of the crime
> itself.  *State v. Hofer,* 4th Dist. No. -7CA835, 2008-Ohio-242
> [2008 WL 203374], ¶ 36; see, also, *State v. Haynes*, 130 Ohio
> App.3d 31, 34, 719 N.E.2d 576 (1998).  It is comprised of "(1)
> The act [and] (2) the criminal agency of the act."  *State v.
> Maranda,* 92 Ohio St. 364, 114 N.E. 1038 (1916), paragraph
> one of the syllabus.  See, also, *State v. Edwards,* 49 Ohio St.2d
> 31, 34, 358 N.E.2d 1051 (1976), vacated on other grounds, 438
> U.S. 911, 98 S. Ct. 3147 (1978); [*State v.*] *Van Hook,* supra [39
> Ohio St.3d 256] (1988), at 261, 530 N.E.2d 883. 'It has long
> been established as a general rule in Ohio that there must be
> some evidence outside of a confession, tending to establish the
> corpus delicti, before such confession is admissible.' *Maranda*
> at paragraph two of the syllabus.  In other words, the state must
> produce independent evidence of the corpus delicti of a crime
> before the court may admit an extrajudicial confession.  *Hofer*
> at ¶ 36, citing *Maranda* at paragraph two of the syllabus and
> *Haynes* at 34, 719 N.E.2d 576.
>
> "The quantum or weight of such outside or extraneous
> evidence is not of itself to be equal to proof beyond a
> reasonable doubt, nor even enough to make it a prima facie
> case.  It is sufficient if there is some evidence outside of the
> confession that tends to prove some material element of the
> crime charged."  *Maranda* at paragraph two of the syllabus.
> (Emphasis sic.); see, also *Edwards*, supra.  That evidence may
> be direct or circumstantial.  *Maranda*  at 371, 114 N.E. 1038;
> *State v. Nicely,* 39 Ohio St.3d 147, 154-155, 529 N.E.2d 1236

(1988); *State v. Clark,* 106 Ohio App.3d 426, 431, 666 N.E.2d 308 (1995).

**{¶28}** In *Edwards,* supra, the Supreme Court of Ohio noted the historical origins of the corpus delicti rule were designed to protect an accused from being convicted of a crime that never occurred. The court stated that, in light of the "vast number of procedural safeguards protecting the due –process rights of criminal defendants, the corpus delicti rule is supported by few practical or social-policy considerations.' (Emphasis sic.) Id. at 35-36, 358 N.E.2d 1051. Accordingly, there is "little reason to apply the rule with dogmatic vengeance." *Id.;* see, also, *State v. Ferris,* 4th Dist. No. 00CA12, 2001 WL 243424 (Jan.29, 2001), at *6. "The burden upon the state to provide some evidence of the corpus delicti is ***minimal." *Edwards* at 36, 358 N.E.2d 1051; see, also, *Van Hook,* supra.

## B. LEGAL ANALYSIS

**{¶29}** In this matter, we find the State carried its minimal burden of proving independent evidence of the corpus delicti of the crime of theft of a dangerous drug. Appellant was charged with theft, R.C.913.02(A)(1)(2)(3) and (B)(1)(6), which reads:

(A)  No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1)  Without the consent of the owner or person authorized to give consent;

(2)  Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

(3) By deception:

(B)(1)  Whoever violates this section is guilty of theft.

(6)  If the property stolen is any dangerous drug, a violation of this section is theft of drugs, a felony of the fourth degree, or, if the offender previously has been convicted of a felony drug abuse offense, a felony of the third degree.

{¶30}  Removing Appellant's confession from consideration, there was other independent evidence that a crime was committed. Carrie Roush testified she assisted her mother by picking up her prescriptions which included her pain medication.  During the time Ms. Young stayed with her daughter, she resisted using her Vicodin pills.  When Ms. Young returned to her apartment, she had  nearly the entire prescription, a 60-day supply, After the telephone call, Ms. Roush went to her mother's home and recounted her pills and noted that half of the prescription was missing.  Ms. Roush's testimony regarding her actions (excluding the alleged hearsay) provides evidence that her mother was deprived of her pain medication.  Ms. Roush further testified that to her knowledge, only Appellant and his ex-wife were at Mrs. Young's home during the relevant time frame (the last weekend in February) when her mother returned home with nearly the full prescription

of pain medication and the Sunday or Monday that pills were noticed missing. We agree with the trial court's finding that the State presented sufficient evidence to establish the corpus delicti of the crime.

{¶31} We also agree with the trial court's ruling that there was no *Crawford* violation in this matter. The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Supreme Court of the United States has "held that this bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004), citing *Pointer v. Texas,* 380 U.S. 400, 85 S. Ct. 1065 (1965). Likewise, Section 10, Article I of the Ohio Constitution provides, "[i]n any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face." Before its admission, "[w]here testimonial evidence is at issue * * * the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination." *Crawford,* 541 U.S. at 68.

{¶32} Ohio employs two tests to determine whether a statement is testimonial, dependent upon the status of the recipient. When statements are made to non-law enforcement, Ohio has adopted the "objective witness" test, whereby "a testimonial statement includes one made 'under

circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, at ¶ 36, quoting *Crawford* at 52.

{¶33} In this matter, Appellant was not in custody and his statements on the tape-recording were not testimonial. Although his mother's statements on the tape-recording are arguably, hearsay, we agree that the limiting instruction was sufficient. The trial court cautioned the jury that the mother's statements were to be heard for the purpose of placing Appellant's words in context, and not for the truth of the matters asserted in the statements.

{¶34} As we have agreed with the trial court's finding that there was sufficient evidence to establish the corpus delicti of the alleged crime in this matter, we further find that the trial court did not err in allowing Appellant's tape-recorded confession to be admitted into evidence. Therefore we overrule this assignment of error.

ASSIGNMENT OF ERROR THREE

{¶35} Appellant also contends that jury's judgment was based upon insufficient evidence and is against the manifest weight of the evidence. For the reasons which follow, we disagree.

## A.  STANDARD OF REVIEW

**{¶36}**  When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at  trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  See, also, J*ackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781 (1979).

**{¶37}**  This test raises a question of law and does not allow us to weigh the evidence. *State v. Martin,* 20 Ohio App.3d 172, 174, 485 N.E.2d 717 (1983).  Rather, the test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson* at 319.  We reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact.  *State v. Thomas,* 70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356 (1982);  *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1986), paragraph one of the syllabus.

{¶38} Even when sufficient evidence supports a verdict, we may conclude that the verdict is against the manifest weight of the evidence, because the test under the manifest weight standard is much broader than that for sufficiency of the evidence. *State v. Banks,* 78 Ohio App.3d 206, 214, 604 N.E.2d 219 (1992); *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. *State v. Garrow,* 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814; *Martin* at 175, 485 N.E.2d 717.

{¶39} "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge,* 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph two of the syllabus. Whether the evidence supporting a defendant's conviction is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative value

and therefore should be subjected to the same standard of proof." *Jenks* at paragraph one of the syllabus.

## B. LEGAL ANALYSIS

{¶40} The parties stipulated that the pain medication belonging to Clara Young contained Hydrocodone. Carrie Roush acknowledged in her testimony her mother's prescribed pain medication was Vicodin. Ms. Roush testified she assisted her mother with her various medications and, upon receipt of a phone call from her mother, discovered, herself, half of the pills in the prescription missing. [5] In summary, Carrie Roush's testimony, without the alleged hearsay statement, established that her mother had a nearly full prescription of pain medication when she went home and, after the weekend, when Ms. Roush counted the pills again, approximately half were missing. This testimony in and of itself establishes ownership and deprivation. The alleged hearsay statement only explains how or why she went to her mother's house to count the pills.

{¶41} The State also presented testimony from Patrolman Freed, who testified he was sent to make contact with Clara Young. Patrolman Freed also testified he assisted her in tape-recording a conversation between Mrs. Young and Appellant. He testified the purpose of the tape-recording was to

---

[5] We note although the State sufficiently links the allegation in the indictment regarding Hydrocodone to the testimony regarding "pain medication" and "Vicodin," no such link is made through testimony to prove the alleged theft of approximately ten Cyclobenzaprine pills.

elicit a confession from Appellant about stealing the pills. However, Patrolman Freed did not tell Ms. Young what to say to her son. This tape recording was played for the jury and the jury was able to hear the Appellant promptly admit he took five pain pills. The tape recording was admitted as State's Exhibit B.

{¶42} The defense attempted to create reasonable doubt by portraying the victim as a confused and emotional woman. Appellant and his girlfriend both testified that Mrs. Young had been confused and mistaken in the past when she accused Appellant of harming her bird and stealing a gas card. Both denied Appellant's involvement in any crime. Appellant testified his father died in 2002 and the victim was Appellant's only surviving parent. The transcript indicates Appellant became tearful. Appellant specifically testified he told his mother he took the pills to "appease her" and "stop the arguing."

{¶43} The weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier,* 73 Ohio St. 3d 323, 339, 1995-Ohio-235, 652 N.E.2d 1000, citing *State v. Grant,* Ohio St.3d 465, 477, 1993-Ohio-171, 620 N.E.2d 50. The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the

credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). It appears that here, the jury found Carrie Roush's testimony that her mother's Vicodin pills were missing to be credible. It also appears the jury did not choose to believe Appellant's explanation as to why he so quickly admitted to his mother over the phone taking five pain pills from her. We will not substitute our judgment for that of the jury under these circumstances.

{¶44} In light of the evidence adduced at trial, we cannot conclude the jury lost its way and created a manifest miscarriage of justice by finding Appellant guilty of one count of theft of a dangerous drug. Further, we conclude that there was substantial evidence upon which the jury could have concluded that all the essential elements of the crime charged had been proven beyond a reasonable doubt. As such, we overrule Appellant's third assignment of error.

## ASSIGNMENT OF ERROR FOUR

{¶45} As Appellant's final assignment of error, he incorporates his arguments from the preceding assignments of error and specifically contends his counsel rendered ineffective assistance by failing to object to Carrie Roush's statement "I received a phone call from my mom that some of her pills were missing." In Appellant's reply brief, he further asserts

counsel erred by (1) eliciting Carrie Roush's testimony regarding Appellant's character trait of "fighting back," and (2) eliciting Chief Sams' testimony regarding the victim's emotional state.  For the reasons which follow, we disagree.

## A.  STANDARD OF REVIEW

{¶46}  Criminal defendants have a right to counsel, including a right to the effective assistance from counsel.  *McMann v. Richardson,* 397 U.S. 759, 770, 90 S. Ct. 1441 (1970); *State v. Stout,* 4th Dist. No. 07CA5, 2008-Ohio-1366, ¶ 21.  To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial.  *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052 (1984); *State v. Issa,* 93 Ohio St. 3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff,* 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998).  "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation.  To show prejudice, the defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different."  *State v. Conway,* 109 Ohio St.3d 412, 2006 Ohio-2815, 848 N.E.2d 810, ¶ 95 (citations omitted).  "Failure to establish either

element is fatal to the claim." *State v. Jones,* 4th Dist. No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal,* 87 Ohio St. 3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶47} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor,* 4th Dist. No. 07CA1, 2008-Ohio-482, ¶ 10, citing *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Gondor,* 112 Ohio St.3d 377, 2006 Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin,* 37 Ohio St.3d 153, 524 N.E.2d 476 (1988).

**{¶48}**  To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different.  *State v. White,* 82 Ohio St.3d 15, 23, 693 N.E.2d 772 (1998); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), at paragraph three of the syllabus.  Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated.  See *State v. Clark,* 4th Dist. No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker,* 4th Dist. No. 01CA2592 (Apr.2, 2002); *State v. Kuntz,* Ross App. No. 1691 (Feb. 26, 1992).

## B.  LEGAL ANALYSIS

**{¶49}**  We do not believe appellant can show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.  In this matter, had counsel lodged an objection to Carrie Roush's testimony that she "received a phone call from [her]mom that some of her pills were missing," the State would have made the same argument as it has on appeal.  The same analysis regarding the admission of Ms. Roush's statement would apply and the trial court would likely have admitted the statement. The State's position regarding Ms. Roush's statement is that the statement  was not offered for the truth of the matter asserted, but  was offered to show personal knowledge regarding her

mother's prescription and it assisted in explaining her subsequent actions of going to her mother's house and recounting the pills in her prescription. Furthermore, as a practical matter, lodging the objection and/or requesting some type of curative instruction would simply call attention to it and perhaps unduly emphasize the complete content of the statement in the jury's mind.  We are not convinced that the outcome of the proceeding would have been different had counsel made an objection.  We do not find Appellant was prejudiced by counsel's omission.

{¶50}  In reference to assignment of error two incorporated herein, Appellant's argument that the trial court erred in admitting his confession in the absence of a corpus delicti, we find Appellant was not rendered ineffective assistance.  Appellant lodged an objection to the playing of the tape recording at the appropriate juncture at trial. He argued the objection based on the corpus delicti rule and on the hearsay rules.  He renewed his objection when the tape recording was offered into evidence at the close of the State's case. We do not find counsel was prejudiced by counsel's action in this regard.

{¶51}  In reference to Appellant's assignment of error three, the "sufficiency of the evidence" and "manifest weight of the evidence arguments" incorporated herein, Appellant again argues that counsel's

failure to object to the alleged hearsay statement of Carrie Roush allowed the only evidence of ownership and deprivation to be admitted. However, as we have reasoned above, Ms. Roush's testimony that she assisted her mother with her medications after her hospital stay and was aware of what she took and the amount she had, coupled with her testimony that she counted them with her mother later and half were missing, alone establishes the ownership and deprivation. The alleged hearsay that she "received a phone call from her mother that half her pills were missing" only clarifies why she went to her mother's to count the medicine. And as indicated above, we consider it reasonable trial strategy not to call attention to the statement by objecting to it.

{¶52} In Appellant's reply, he further argues counsel erred by eliciting testimony from Carrie Roush regarding her brother's trait of "fighting back." As discussed above, the defense strategy was to portray the victim as a woman prone to making rash accusations against Appellant, emotional, anxious, and often mistaken. Defense counsel elicited testimony from Ms. Roush which further supported this characterization of the victim. Ms. Roush admitted her mother did not handle family strife well. She testified her mother would have anxiety attacks. She testified she questioned her mother's memory. Counsel elicited Ms. Roush's opinion that her mother

"jumps to conclusions" and was "confrontational." Against the backdrop of testimony that the mother had a volatile emotional state and memory problems, Ms. Roush's testimony that her brother would "fight back" against an accusation appears harmless. Moreover, Appellant took the opportunity to testify he did not "fight back" in this particular instance because he was tired of arguing with his mother and wanted to appease her.

{¶53} Finally, Appellant argues counsel was deficient for calling Chief Sams and eliciting testimony from him that the victim's emotional state was upset and angry. We disagree. The direct testimony of Aimee Young and Appellant also indicated an emotional woman known to argue with her children and grandchildren. The substance of Chief Sams' testimony also showed B& W Pharmacy records were never investigated, the pill bottle was never photographed or fingerprinted, the pills were never counted, and no one took a statement from Appellant or his ex-wife. He testified no search was made of Appellant's residence. This testimony from Chief Sams was elicited, ostensibly, to raise reasonable doubt in this matter. Possibly, to further discredit the State's case, Chief Sams testified that Patrolman Freed was no longer with the Beverly Police Department. As such, we do not find Appellant was prejudiced by the actions of trial counsel

with regard to the testimony elicited from Carrie Roush or Chief Sams.  As

such, we also overrule this assignment of error.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, J.:    Concurs in Judgment & Opinion.
Harsha, J.:  Concurs in Judgment Only.

For the Court,

BY:    _____
         Matthew W. McFarland
         Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**