**[Cite as *State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597.]**

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| The STATE OF OHIO, | : | |
| Appellee, | : | Case No. 10CA3153 |
| v. | : | |
| PUCKETT, | : | DECISION AND JUDGMENT ENTRY |
| Appellant. | : | |

_____

APPEARANCES:

Michael M. Ater, Ross County Prosecuting Attorney, and Richard W. Clagg, Assistant Prosecuting Attorney, for appellee.

Benjamin J. Partee, for appellant.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 12-28-10

ABELE, Judge.

{¶ 1}  This is an appeal from a Ross County Common Pleas Court judgment of conviction and sentence.  The trial court found Darrell A. Puckett, defendant below and appellant herein, guilty of rape, in violation of R.C. 2907.02, and sentenced him to life in prison.

{¶ 2}  Appellant raises the following assignments of error for review:

FIRST ASSIGNMENT OF ERROR:

The trial court committed a plain error when it allowed the appellant's confession to be admitted as the appellee had not established the corpus delicti of the offense of rape.

SECOND ASSIGNMENT OF ERROR:

Appellant's conviction on the third count of rape was against the manifest weight of the evidence.

{¶ 3}  On September 4, 2009, the Ross County Grand Jury returned an indictment that charged appellant with three counts of rape based upon three separate incidents: (1) count one concerned conduct alleged to have occurred between February 18, 2008, and July 4, 2008; (2) count two concerned conduct alleged to have occurred between January 1, 2009, and April 1, 2009; and (3) count three concerned conduct alleged to have occurred on August 18, 2009. Appellant entered not-guilty pleas.

{¶ 4}  On January 11 and 12, 2010, the trial court held a bench trial.   Neri Dewitt, the victim's mother, stated that on August 18, 2009 she underwent outpatient surgery while appellant, her father, watched her two children: a three-year-old daughter and a seven-year-old son.   After she returned home from the surgery, her son told her about some activity that happened while she was at the hospital.   Dewitt then "immediately" took her daughter to the hospital.   At the hospital, medical professionals conducted a physical examination of the child, which included an examination to determine whether she had been subjected to a sexual assault.   The examination did not reveal any physical signs of sexual assault.

{¶ 5}  John Puckett, appellant's son, testified that in July 2009, he had had a conversation with appellant.   Appellant related that he did not understand why Dewitt believed he had done something to her daughter.   "He kept denying that he ever did anything to [the victim]."   John stated that appellant "then just out of the blue * * * said it wouldn't have happened if she didn't look so much like your mother.   And I said what are you talking about?   He said the little girl just looks so much like your mom, I wouldn't have did [sic] anything if she didn't."   John then stated

that he thinks this conversation occurred in July 2008, "after the first allegation."[1]

{¶ 6}   Ross County Sheriff's Detective Tony Wheaton testified that on August 18, 2009, he was dispatched to Adena Regional Medical Center to investigate the possible sexual abuse of a three-year-old girl.   Upon his arrival, medical personnel informed him that the victim was undergoing a sexual-assault examination.   Detective Wheaton stated that on August 24, 2009, he interviewed appellant.   The detective stated that he tape-recorded the interview, and the prosecution then played the tape.[2]   Detective Wheaton further stated that he reviewed the findings of the sexual-assault examination[3] and explained that it is not unusual for an examination to fail to reveal physical findings of sexual assault, especially in a case involving digital penetration.

{¶ 7}   The prosecution then attempted to call the victim's brother to the witness stand, but apparently, he was reluctant.   The court then continued the trial until the next day.

{¶ 8}   The next day, the victim's brother took the stand.   He stated that he remembered the day his mother went to the hospital for outpatient surgery but stated that he had stayed at his aunt's house while she was at the hospital and that his grandfather was not present.   He further stated that although he recalled his grandfather watching him and his little sister, he did not

---

[1] The court later observed that although John testified that appellant made the incriminating statements in July 2009 or 2008, the sexual-abuse allegations did not arise until August 2009.   The court thus concluded that John must have incorrectly recalled the date, but not the substance, of the conversation with appellant.

[2] We observe that although the trial transcript indicates that the tape cassette was played, it does not contain a transcription of that tape.

[3] The parties stipulated to the admission of this sexual-assault report.   We, however, have been unable to locate it in the record transmitted to this court.   Because the parties do not dispute the findings of the examination, we rely upon the parties' representations and the trial testimony concerning this report.

remember anything "unusual" that happened.   He testified that he recalls telling his mother "about something" that his grandfather did to his sister, but he could not remember what it was.

{¶ 9}   After the prosecution completed its case, and moved to admit appellant's taped confession into evidence, appellant objected.   In particular, appellant argued that because the prosecution failed to present sufficient evidence to prove the corpus delicti of the offense of rape, the trial court should not permit appellant's confession to be introduced as evidence.   Appellant recognized that he did not object when the prosecution played the tape during its case-in-chief, but he decided to object "in light of the evidence that has been received elsewhere in this trial on that ground that * * * the requirement of corpus delicti has not been established by any subsequent evidence offered to this court."

{¶ 10}  The trial court overruled appellant's objection and explained:

> We have in this case evidence that shows that, at this point and time, that [appellant] was the grandfather of [the victim], who at the time I believe was either two or three years old. * * * He had the care * * * of [the victim], and the care of * * * her brother * * * while * * * the children's mother was having same day surgery.   When [the mother] came home from the surgery, [the boy] said something to her that caused her to immediately take [the victim] to the hospital for an examination.   There was no * * * physical evidence of any abuse of [the victim].   Subsequently there was an interview of [appellant] in which he admitted to inserting a digit approximately ½" into [the victim's] vagina. * * * Also [appellant] made a statement to his son, John, in which he initially said that [the children's mother] was telling lies and then suddenly said I wouldn't have done anything if the little girl hadn't looked so much like her grandmother.   So, in addition to [appellant]'s confession, we have something that was said by [the boy] to his mother, which led her to take [the victim] to the hospital for an examination. We also have [appellant]'s statement to his son, John Puckett.   I believe that either one of these in and of itself would be sufficient to establish the corpus delicti.

The trial court thus determined that the prosecution had established the corpus delicti with respect to the August 2009 rape charge.   However, the court also found that the prosecution did not establish the corpus delicti with respect to the remaining two counts that allegedly occurred

between February 18, 2008, and July 4, 2008, and between January 1, 2009, and April 1, 2009, respectively. Thus, the court dismissed those counts. The court further determined that appellant's taped confession with respect to the third count would be admitted into evidence.

{¶ 11} Appellant did not present any evidence, and the trial court deemed the matter submitted. After a recess, the court returned with its verdict and found appellant guilty of one count of rape. On March 9, 2010, the court sentenced appellant to serve life imprisonment without the possibility of parole. This appeal followed.

I

{¶ 12} In his first assignment of error, appellant asserts that the trial court erred by admitting his confession into evidence when the prosecution failed to present sufficient evidence independent of his confession to establish the corpus delicti of the crime of rape.

A

PLAIN ERROR

{¶ 13} We first observe that appellant failed to object to the admission of his confession when the prosecution first introduced it during the detective's testimony. Instead, appellant objected at the close of the prosecution's evidence. Appellant thus asserted that the prosecution did not prove the corpus delicti, thus rendering his confession inadmissible.

{¶ 14} We believe that appellant should have objected when the prosecution introduced his confession, not after the close of evidence and after the prosecution had already introduced the damaging testimony. See *State v. Lortz*, Summit App. No. 23762, 2008-Ohio-3108, at ¶ 13 (refusing to consider corpus delicti argument when defendant failed to object when written confession admitted). Thus, because appellant did not timely object, he has waived all but plain

error.  See id.  It is well settled that we may notice plain errors or defects affecting substantial rights, despite an appellant's failure to bring them to the attention of the trial court.  Crim.R. 52(B).  Plain error exists when the error is plain or obvious and when the error "affect[s] 'substantial rights.' "  The error affects substantial rights when " but for the error, 'the outcome of the trial [proceeding] clearly would have been otherwise.' "  *State v. Litreal*, 170 Ohio App.3d 670, 2006-Ohio-5416, 868 N.E.2d 1018, at ¶ 11, quoting *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240.  Generally, courts may take notice of plain error only with the utmost of caution, under exceptional circumstances, and to prevent a manifest miscarriage of justice.  *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, at ¶ 78; *State v. Patterson*, Washington App. No. 05CA16, 2006-Ohio-1902, at ¶ 13.  A reviewing court should consider noticing plain error only if the error " ' "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." ' "  *Barnes*, 94 Ohio St.3d at 27, quoting *United States v. Olano* (1993), 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508, quoting *United States v. Atkinson* (1936), 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555.

B

STANDARD OF REVIEW

{¶ 15} We review a trial court's decision as to whether the state established the corpus delicti of a crime under a manifest-weight-of-the-evidence standard.  See *In re W.B. II*, Highland App. No. 08CA18, 2009-Ohio-1707, at ¶ 31 and 32.  Thus, we will uphold the trial court's decision as long as the record contains some competent and credible evidence independent of the defendant's confession to establish that a crime occurred.  See, e.g., *State v. Maranda* (1916), 94 Ohio St. 364, 114 N.E. 1038, paragraphs one and two of the syllabus; *W.B.* at ¶ 32.

C

CORPUS DELICTI

**{¶ 16}** Our decision in *W.B.* contains a detailed explanation of the corpus delicti

requirement:

> The corpus delicti of a crime is essentially the fact of the crime itself. *State v. Hofer*, Adams App. No. 07CA835, 2008-Ohio-242, ¶ 36; see, also, *State v. Haynes* (1998), 130 Ohio App.3d 31, 34, 719 N.E.2d 576. It is comprised of "(1) The act [and] (2) the criminal agency of the act." *State v. Maranda* (1916), 94 Ohio St. 364, 114 N.E. 1038, paragraph one of the syllabus. See, also, *State v. Edwards* (1976), 49 Ohio St.2d 31, 34, 358 N.E.2d 1051, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155; *Van Hook*, supra, at 261, 530 N.E.2d 883. 'It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the corpus delicti, before such confession is admissible.' *Maranda* at paragraph two of the syllabus. In other words, the state must produce independent evidence of the corpus delicti of a crime before the court may admit an extrajudicial confession. *Hofer* at ¶ 36, citing *Maranda* at paragraph two of the syllabus and <u>Haynes</u> at 34, 719 N.E.2d 576.
> "The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case. It is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged." *Maranda* at paragraph two of the syllabus. (Emphasis sic.); see, also, *Edwards*, supra. That evidence may be direct or circumstantial. *Maranda* at 371, 114 N.E. 1038; *State v. Nicely* (1988), 39 Ohio St.3d 147, 154-155, 529 N.E.2d 1236; *State v. Clark* (1995), 106 Ohio App.3d 426, 431, 666 N.E.2d 308.
> In *Edwards*, supra, the Supreme Court of Ohio noted the historical origins of the corpus delicti rule were designed to protect an accused from being convicted of a crime that never occurred. The court stated that, in light of the "vast number of procedural safeguards protecting the due-process rights of criminal defendants, the corpus delicti rule is supported by few practical or social-policy considerations." (Emphasis sic.) Id. at 35-36, 358 N.E.2d 1051. Accordingly, there is "little reason to apply the rule with a dogmatic vengeance." Id.; see, also, *State v. Ferris* (Jan. 29, 2001), Lawrence App. No. 00CA12, 2001 WL 243424, at *6. The burden upon the state to provide some evidence of the corpus delicti is minimal. *Edwards* at 36, 358 N.E.2d 1051; see, also, *Van Hook*, supra.

Id. at ¶ 33-35.

**{¶ 17}** In applying the corpus delicti rule in *W.B.*, we determined that the state satisfied the

minimal requirement to produce some evidence independent of the defendant's confession to

establish the corpus delicti of the crime of rape. In reaching our decision, we relied upon two

prior cases: *State v. Ledford* (Jan. 24, 2000), Warren App. No. CA99-05-014, and *State v. Hofer*,

Adams App. No. 07CA835, 2008-Ohio-242. We discussed those cases as follows:

> In *State v. Ledford* (Jan. 24, 2000), [Warren] App. No. CA99-05-014, 2000
> WL 127095, the Twelfth District Court of Appeals considered whether the state
> had proved the corpus delicti of the crime where the defendant was charged with
> raping a five-year-old boy. The boy, who did not have any physical signs of
> abuse, told his mother that the defendant had sucked on his penis. When later
> questioned by the police, the defendant confessed that he had raped the boy. At
> trial, the boy recanted. In finding that the state produced some evidence tending to
> prove the material elements of rape, the court specifically noted that the state had
> provided testimony that the boy was six years old at the time of the offense and not
> the defendant's spouse. Moreover, the mother testified that her child spent the
> night at the defendant's apartment at the time of the offense, that the boy made a
> statement to her which caused her to call the police and then take him to the
> hospital, and that the hospital staff examined his genitals. The court found that
> such evidence satisfied the corpus delicti requirement for the rape charge.
> We recently considered *Ledford* when addressing a similar argument in
> *Hofer*, supra. There, the defendant argued that his trial counsel was deficient for
> failing to object to the admission of his confession on the basis that the state had
> failed to produce any substantive evidence of the corpus delicti of the crime where
> he was charged with performing cunnilingus on a two-year-old girl. In concluding
> that the state presented some evidence outside of the confession that tended to
> prove some material elements of rape, we stated:
> "Here, as in *Ledford,* the victim's Mother's testimony contains some
> evidence of the elements of *Hofer*'s crime. As she entered the apartment, she saw
> *Hofer* covered only with a blanket. He appeared to have an erection. She saw her
> naked two-year-old daughter on top of *Hofer* with her legs down towards <u>Hofer</u>'s
> stomach and her vagina up on Hofer's face. Based on what the mother saw, she
> testified that she talked to her family, which led to a call to police and a medical
> examination of the child by a qualified SANE nurse."

*Hoffer*, 2008-Ohio-242, at ¶ 38-39.

{¶ 18} We then considered the foregoing rules and principles in light of the facts present in

*W.B.*, 2009-Ohio-1707, and observed that the victim testified that the defendant had touched her

"down here," indicating that she meant "the privates," with his finger and that it had "hurt." Id. at ¶ 38. The victim's grandmother testified that while giving the victim a bath, she noticed redness in the victim's vaginal area. Id. The grandmother asked the victim what had happened and then called the victim's mother. The victim's mother testified that the grandmother accused the defendant (the victim's brother) of touching the victim. Id. The victim's grandmother contacted children services, and a detective subsequently scheduled an interview with the defendant. We concluded that the totality of the facts and inferences constituted some evidence to establish the corpus delicti.

{¶ 19} In *State v. Edinger*, Franklin App. No. 05AP-31, 2006-Ohio-1527, the court considered the corpus delicti rule under facts similar to those in the case at bar. In *Edinger*, the victim's father informed the mother that the six-year-old victim told him that "someone had been messing with her in a sexual manner." Id. at ¶ 7. The mother then contacted the police, who advised her to take the victim to the hospital. A social worker who talked with the victim testified that the victim told her that the defendant had "touched her private parts with his mouth and [penis] when he thought she was asleep * * *. [H]e would roll her over and she would pretend to be asleep." Id. at ¶ 10. The nurse who examined the victim stated that she did not find any physical signs of sexual abuse, but further explained that the exam results were not inconsistent with the victim's history. The nurse stated that a child of the victim's age may be sexually assaulted yet show no signs of physical trauma. Id. at ¶ 11. During a police interview, the defendant admitted that he may have had sexual contact with the victim.

{¶ 20} In determining whether the state had presented sufficient evidence independent of the defendant's confession to establish the corpus delicti of the crime, the appellate court excluded

the victim's statements from its analysis.   Instead, the court relied upon the following facts:

> The defendant lived with [the victim], her mother, and her siblings * * * during the relevant time period * * *.   In August of 2003, [the victim] made statements to her father which prompted her father and her mother to call the police. [The victim]'s mother called the police, and, based upon the information which was conveyed to the police, [the victim]'s mother was referred to Children's Hospital. [The victim] was seen at Children's Hospital and, based upon the statements [the victim] made, a complete physical examination was conducted, and [the victim] was tested for sexually transmitted diseases.

*Edinger*, 2006-Ohio-1527, ¶ 28.   The court determined that the trial court properly found that the state presented sufficient evidence of the corpus delicti of the crime.   Id. at ¶ 32.   The court wrote:

> The state presented evidence that [the victim] was between two to three years old at the time, that she was not defendant's spouse, that she lived in a home with defendant during the relevant time period, that she made certain comments to her father which prompted her father and her mother to contact the police, that the police referred them to Children's Hospital, and that thereafter she was examined by a medical professional.

Id.

{¶ 21} While both appellee and appellant recognize that *Edinger* bears some similarity to the case at bar, appellant contends that the case at bar is missing one important fact present in *Edinger*.   Appellant observes that in *Edinger*, the parents learned of the sexual conduct directly from the victim, while in the case sub judice, the mother learned of some activity that prompted her to take the victim to the hospital from the victim's brother.[4]   Appellant contends that because the victim's mother in the case sub judice did not learn the information first-hand from the victim, the information that she did learn is somehow inappropriate to consider when determining whether the

---

[4] Our recitation of the statements the victim's brother made is intentionally vague due to the lack of any admissible evidence as to what the victim stated to his mother.

prosecution presented sufficient evidence to establish the corpus delicti. We, however, are not persuaded that the source of the information is of consequence when conducting a corpus delicti inquiry. Rather, we believe that it is the fact of the information—not necessarily the source of the information—that is relevant in determining whether sufficient evidence of the corpus delicti exists.

{¶ 22} We find *State v. Kraft*, Hamilton App. No. C-060238, 2007-Ohio-2247, instructive regarding the above principle, i.e., that it is the fact of the information, and not necessarily the source of the information, that is relevant in a corpus delicti inquiry. In *Kraft*, law enforcement officers learned of the defendant's sexual abuse of his daughter through an Internet chat room. In that case, a law enforcement officer posed as a 30-year-old female who had a ten-year old daughter. While posing, the officer engaged in online conversations with the defendant in which the defendant informed the posing officer that his daughter was four years old, and that his daughter "does everything but I don't pentrate [sic] her pussy, I do pentrate [sic] her ass." Id. at ¶ 3. The law enforcement officer did not actually observe the defendant engaging in a sexual act with his daughter. After the defendant's arrest, he confessed to officers that he had anally raped his daughter on two occasions and that he had forced her to perform fellatio on three occasions. The defendant later admitted to a children services employee that he had sexually abused his daughter.

{¶ 23} During a subsequent physical examination of the victim, she stated that "daddy [had] touched her lady," the term she used to describe her vaginal area. Id. at ¶ 11. The physical examination, however, did not reveal any physical signs of sexual trauma.

{¶ 24} After the victim and her siblings were placed with a foster family, the foster mother

observed the siblings engaging in a game of a sexual nature.   She stated that while she bathed the children, they engaged in a game they called "choo-choo," in which they would use their private parts to bump and grind against the other's "back end."   Id. at ¶ 12.   The foster mother also heard the victim state that her dad has a "big weewee" and that her dad "put his weewee in her butt and it hurt."   Id.

{¶ 25} On appeal, the defendant asserted that his confession was inadmissible because the state had failed to present sufficient evidence to establish the corpus delicti.   The appellate court disagreed, however, and determined that the following facts sufficiently established the corpus delicti: (1) a doctor testified that the victim's "precocious knowledge of sexual activity [was] an indicator of sexual abuse"; (2) the defendant admitted to the online officer posing as a female that he had anally raped his daughter and that he could make her perform fellatio; and (3) the defendant admitted to a children services worker that he had sexually abused his daughter.   Id. at ¶ 21-24. The court did not consider the apparently inadmissible hearsay statements that the victim made in reaching its decision.

{¶ 26} We believe that the case at bar falls somewhere in between *Edinger* and *Kraft*, 2007-Ohio-2247.   Similar to the defendant's admission to the children services employee in *Kraft*, in the case at bar the appellant admitted to his son that he had sexually abused the victim. Moreover, in the case sub judice, as in *Kraft*, there was no direct testimony from the victim that appellant had engaged in a sexual act with her.   Rather, the source of the information derived from (1) the victim's brother, in the case at bar, and (2) an officer's online chat with the defendant, in *Kraft*.   In both *Kraft* and the case at bar, the evidence of sexual activity is circumstantial.   In *Kraft*, the circumstantial evidence consisted of (1) the doctor's testimony that the victim's

precocious sexual knowledge indicated sexual abuse; (2) the defendant's online admission to the officer posing as a female; and (3) the defendant's admission to the children services worker.   In the case at bar, the circumstantial evidence consists of (1) the victim's brother's relaying some concerning information to his mother; (2) after learning this information, the mother's immediate transfer of the victim to the hospital; and (3) medical personnel's examination of the victim for evidence of sexual abuse.   We note that although the specifics of the son's statement are not apparent in the trial testimony, the mother's reaction speaks volumes.   Obviously, the son had told her something that made her immediately concerned for the victim's well-being.   Putting all of these circumstances together leads to an inference that someone had sexually abused the victim.   Additionally, as in *Kraft*, appellant subsequently confessed his sexual acts to a person unaffiliated with law enforcement.   Like the *Kraft* court, we believe that the foregoing facts satisfy the minimal standard necessary to establish the corpus delicti.   Even if this evidence does not constitute prima facie evidence of the crime of rape, it satisfies the minimally sufficient standard required to establish the corpus delicti.

{¶ 27} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.

II

{¶ 28} In his second assignment of error, appellant asserts that his conviction is against the manifest weight of the evidence.   He argues that aside from his confession, the prosecution presented no "dispositive evidence showing that the alleged sexual assault had ever occurred."

{¶ 29} Initially, we observe that although appellant frames this assignment of error as a manifest-weight-of-the-evidence      argument,      within      his      argument,      he      uses      the

sufficiency-of-the-evidence standard of review. Specifically, appellant states that our standard of review is to view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 274. We point out, however, that "sufficiency" and "manifest weight" present two distinct legal concepts. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. However, in an abundance of caution and in view of the life sentence that appellant received, we will review appellant's second assignment of error using both the manifest-weight standard and the sufficiency standard.

{¶ 30} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See *Thompkins*, 78 Ohio St.3d at 386 ("sufficiency is the test of adequacy"); *Jenks*, 61 Ohio St.3d at 273, 574 N.E.2d 492. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *Jenks* at 273. Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390 (Cook, J., concurring).

{¶ 31} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. See *State v. Hill* (1996), 75 Ohio St.3d 195, 205, 661 N.E.2d 1068; *State v. Grant* (1993), 67 Ohio St.3d 465, 477, 620 N.E.2d

50. A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. See *State v. Tibbetts* (2001), 92 Ohio St.3d 146, 749 N.E.2d 226; *State v. Treesh* (2001), 90 Ohio St.3d 460, 739 N.E.2d 749.

{¶ 32} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins*, 78 Ohio St.3d at 387. When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. See *State v. Issa* (2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904; *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶ 33} If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. See *State v. Eley* (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus. A reviewing court should find a conviction against the manifest weight of the evidence only in the "

'exceptional case in which the evidence weighs heavily against conviction.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; see also, *State v. Lindsey* (2000), 87 Ohio St.3d 479, 483, 721 N.E.2d 995.

{¶ 34} When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction. See *State v. Pollitt*, Scioto App. No. 08CA3263, 2010-Ohio-2556, at ¶ 14. " 'Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.' " *State v. Lombardi*, Summit App. No. 22435, 2005-Ohio-4942, at ¶ 9, quoting *State v. Roberts* (Sept. 17, 1997), Lorain App. No. 96CA006462. In the case sub judice, therefore, we first consider whether appellant's conviction is against the manifest weight of the evidence.

{¶ 35} R.C. 2907.02(A)(1)(b) sets forth the offense of rape as charged in the case sub judice as follows: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * '[t]he other person is less than thirteen years of age."

{¶ 36} In the case at bar, our review reveals that ample competent and credible evidence supports appellant's conviction. We do not believe that this is one of the "exceptional" cases that "weighs heavily against conviction." *Thompkins,* 78 Ohio St.3d at 387. We first observe that appellant does not raise any argument that the prosecution failed to establish that the victim is not his spouse or that she is less than 13 years of age. Rather, appellant asserts that the prosecution failed to present substantial competent and credible evidence that he engaged in sexual conduct with the victim. We disagree. Appellant confessed to the crime.[5] Appellant made statements

---

[5] The prosecution introduced appellant's taped confession at trial. As we earlier noted,

to his son that indicated that he had sexually abused the victim because she looks like her grandmother, i.e., appellant's deceased wife. The victim's mother testified that she learned information from the victim's brother, her son, that led her to take the victim to the hospital, where the victim underwent a sexual assault examination. We believe that the foregoing facts constitute ample competent and credible evidence that appellant committed the crime of rape.

{¶ 37} To the extent that appellant asserts that the prosecution failed to produce evidence independent of his confession to establish the offense, our resolution of appellant's first assignment of error adequately disposes of this argument.

{¶ 38} Furthermore, because we have determined that appellant's conviction is not against the manifest weight of the evidence, we have necessarily concluded that sufficient evidence supports his conviction. Thus, to the extent that appellant asserts that the prosecution failed to present sufficient evidence to support his conviction, we disagree.

{¶ 39} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error and affirm the trial court's judgment.

Judgment affirmed.

MCFARLAND, P.J., and HARSHA, J., concur.

_____

HARSHA, Judge, concurring.

{¶ 40} I agree with the analysis of the principal opinion but note that because the corpus

---

however, the court reporter did not transcribe this tape as part of the trial transcript. Furthermore, the record transmitted on appeal does not contain the tape introduced at trial. Inasmuch as neither party disputes the substance of appellant's confession, we have no reason to question appellant's confession as indicated in the parties' briefs.

delicti rule is foundational in character, the rules of evidence are generally not applicable in the admissibility analysis.   See *In re W.B. II,* Highland App. No. 08CA18, 2009-Ohio-1707, at ¶ 32. Accordingly, both the trial court and this court can consider hearsay, if it is deemed reliable, in deciding whether the appellant's confession is admissible.