[Cite as *State v. Norton*, 2015-Ohio-4905.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102017**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOVAN D. NORTON

DEFENDANT-APPELLANT

---

**JUDGMENT:**
APPLICATION DENIED

---

Cuyahoga County Court of Common Pleas
Case No. CR-13-578127-B
Application for Reopening
Motion No. 488844

**RELEASE DATE:** November 23, 2015

**FOR APPELLANT**

Jovan Norton
Inmate No. 661065
Lake Erie Correctional Institution
P.O. Box 8000
Conneaut, Ohio   44030


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:    Aqueelah A. Jordan
Assistant County Prosecutor
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1} Jovan Norton has filed a timely application for reopening pursuant to App.R. 26(B). Norton is attempting to reopen the appellate judgment that was rendered in *State v. Norton*, 8th Dist. Cuyahoga No. 102017, 2015-Ohio-2516, that affirmed his convictions and sentences for the offenses of kidnapping with firearm specifications, aggravated robbery with firearm specifications, and having weapons while under disability. We decline to reopen Norton's appeal.

{¶2} In order to establish a claim of ineffective assistance of appellate counsel, Norton is required to establish that the performance of his appellate counsel was deficient and the deficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), *cert. denied*, 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 767 (1990).

{¶3} In *Strickland*, the United States Supreme Court held that a court's scrutiny of an attorney's work must be highly deferential. The court further stated that it is all too tempting for a defendant to second-guess his attorney after conviction and that it would be too easy for a court to conclude that a specific act or omission was deficient, especially when examining the matter in hindsight. Thus, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy. *Strickland.*

{¶4} Herein, Norton raises two proposed assignments of error in support of his App.R. 26(B) application for reopening. We find that Norton has failed to establish ineffective assistance of appellate counsel through his two proposed assignments of error.

{¶5} Norton's first proposed assignment of error is that:

Appellant was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution where his appellate counsel omitted a dead bang winner, prejudicing appellant of receiving a full review by the Court.

{¶6} The appellant, through his first proposed assignment of error, does not present any argument with regard to a legitimate proposed assignment of error. Norton through his first proposed assignment of error simply alludes to a "dead bang winner" and the standard of review applicable to a claim of ineffective assistance of appellate counsel. In *State v. Kelly*, 8th Dist. Cuyahoga No. 74912, 1999 Ohio App. LEXIS 2907 (June 21, 2000), this court established that the mere recitation of an assignment of error is not sufficient to meet the burden to prove that the applicant's appellate counsel was deficient for failing to raise the issues he now presents or that there was a reasonable probability that the applicant would have been successful if the present issues had been considered in the original appeal. *See also State v. Jones*, 8th Dist. Cuyahoga No. 99703, 2014-Ohio-4467; *State v. Hawkins*, 8th Dist. Cuyahoga No. 90704, 2009-Ohio-2246. The failure of Norton to present any argument with regard to his first proposed

assignment of error results in the failure to demonstrate that his appellate counsel was deficient and that he was prejudiced by the alleged deficiency. *State v. Freeman*, 8th Dist. Cuyahoga No. 95511, 2011-Ohio-5151.

{¶7} Norton's second proposed assignment of error is that:

> Appellant's mere presence in a vehicle in which he was receiving a ride to a relative's home, while in route to said relative's home being in the company of the driver of said vehicle, who just happen to stop in route to request money owed to said driver by the alleged victim, there was no evidence that they had a plan, that appellant possessed a gun during incident, or that he assisted in the crime if no crime actually took place. The evidence was insufficient to support his convictions, in violation of his constitutional rights under the Sixth and Fourteenth Amendments to the United States and Article 1, Section 10 of the Ohio Constitution.

{¶8} Norton, through his second proposed assignment of error, argues that insufficient evidence was adduced at trial to support his conviction for the offenses of kidnapping, aggravated robbery, having weapons while under disability, and firearm specifications. Our previous review of the record and a new and separate review of the record clearly demonstrates that Norton's convictions for the offenses of kidnapping, aggravated robbery, having weapons while under disability, and firearm specifications were supported by sufficient evidence.

{¶9} An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy.

Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jenks* at 273.

{¶10} In our appellate decision, as rendered in *State v. Norton*, *supra*, we opined that:

> John Currie, the victim, testified that on May 26, 2013, after he finished his shift at Seaway Foods and while standing outside of his car, he was approached by Norton. According to Currie, he knew Norton from his past association with a gang called the Vice Lords — they both were members between 1993 and 1995, but Currie left the gang. Currie further testified that a work colleague, Andre Wilson, who was also a member of Vice Lords, had been approaching him lately about returning to the gang.
>
> Currie testified that Norton greeted him and then quickly revealed that he was there to collect "dues" from Currie. According to Currie, Norton threatened him and warned him not to run when Currie stepped back. Believing that Norton had a gun, Currie followed his instructions and got in his car with Norton, who then told Currie that he wanted $300 and instructed him to drive to "Mookie's," a liquor store on Miles Road. While inside Mookie's, Currie pulled his money out of his wallet, at which point Norton "snatched it" and started counting it. Currie "tried to run out of store" but Andre Wilson was standing at the door, along with two other individuals.
>
> Currie further testified that Norton then instructed Sean, one of the individuals blocking the door, to drive with Currie to Sean's house. Currie testified that, instead of driving to Sean's house, he drove to the Rascal House and ran inside, asked for help, and then passed out. According to Currie, he woke up to water being thrown in his face and then Norton placing him in a choke hold and dragging him out of the store. Eventually, the EMS arrived and took Currie to the hospital. While en route to the hospital, Currie told the EMS workers that he had just been kidnapped and robbed.

Felicia Sawyer testified that she was working at the Rascal House on May 26, 2013, and recalled seeing Currie "staggering, holding his chest" outside the store before walking inside, sitting down, and ultimately falling on the floor. Sawyer called 911. Sawyer further testified that there were no other customers in the store at that time but that the other gentleman who was in the car with Currie came inside after being on his phone and then another car pulled up with two individuals, who also walked inside. Sawyer corroborated Currie's testimony regarding the water being poured on him and ultimately being dragged out of the store. According to Sawyer, Currie appeared to be fearful of the other men but never stated that he had been robbed or kidnapped when he entered the store. Sawyer testified that the EMS arrived seconds after the men had placed Currie in his car.

The state also offered the testimony of the first responders to the 911 call. Maple Heights Fire Department paramedic, Jim Hamrick, testified that when he arrived on the scene, Currie was being assisted by the firefighters already there. Hamrick asked the four gentlemen that were behind Currie if they were Currie's friends, and they indicated that they were and that they were planning on taking him to the hospital in his car. According to Hamrick, Currie was very insistent about getting his keys back and appeared to be very nervous. At that point, Currie was placed into the squad and checked for signs of a stroke. Hamrick testified that Currie disclosed, while they were heading to the hospital, that "he made that up to get out of the situation"; "those men weren't his friends, that they were going to kidnap him and take him somewhere to kill him." Hamrick further testified that there were no medical issues and that the entire incident seemed to be "more a means to get him out of a situation."

Bedford Heights police detective Ericka Payne testified that she investigated Currie's allegations after he reported the incident to the police while in the hospital. Det. Payne first interviewed Currie and then followed up with his reports. She went to Currie's place of employment and recovered video surveillance from the day in question that corroborated Currie's story. Det. Payne also went to Mookie's beverage store, spoke with the owner, and requested the video surveillance footage from inside the store on the day of the incident. Det. Payne testified that she reviewed the video at Mookie's but was not able to obtain a copy the same day because the owner did not know how to copy it. The owner indicated that he would call his "IT guy" and provide a copy later. Det. Payne explained, however, that the IT guy subsequently copied the wrong portion of the

video surveillance and that the correct footage had already been purged by the time that Det. Payne caught the mistake.

Det. Payne also testified that she interviewed the Rascal House employee who observed Currie on the day of the incident. Det. Payne further requested video surveillance from the Rascal House but none was available.

On cross-examination, Det. Payne acknowledged that she never interviewed Norton.

Norton presented three witnesses on his behalf, including himself. Michael Walker, a co-worker and friend of both Andre Wilson and Currie, as well as Norton's friend, testified that he personally witnessed Wilson loan $300 to Currie, which Currie agreed to repay. Walker further testified that Currie later avoided Wilson and never repaid the loan.

Norton testified on his own behalf. According to Norton, on May 26, 2013, he was getting a ride from Wilson to a barbecue at a relative's house. Prior to heading to the barbecue, they stopped at Currie's work to pick up the money that Currie owed Wilson. According to Norton, he greeted Currie and asked for Wilson's money, to which Currie indicated that he needed to go to an ATM. Norton accompanied Currie in his car, and the two drove to Mookie's liquor store. After exiting the store, Norton left in Wilson's car to go to the barbecue, and Currie got into his car with a third individual, who Norton did not know. Norton further testified that Wilson received a call that Currie was having a medical problem at the Rascal House so they drove over there. Norton stated that he attempted to revive Currie while there. Norton further testified that he does not carry a gun and was not carrying one on the day in question.

The defense recalled Det. Payne to the stand and questioned her regarding the videotaped interview of Currie. Det. Payne testified that Currie never reported actually "seeing" a gun on Norton. Det. Payne indicated that Currie stated he felt "what felt like a gun" and indicated more than once that he believed that Norton had a gun on him.

*Id*. at ¶ 3-13.

{¶11} Based upon the testimony adduced at trial, and viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have

found the essential elements of the offenses of kidnapping, aggravated burglary, having weapons while under disability, and firearms specifications proven beyond a reasonable doubt.

{¶12} Finally, when an appellate court determines that the weight of the evidence (manifest weight) supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction. *State v. Leslie*, 4th Dist. Hocking Nos. 10CA17 and 10CA18, 2011-Ohio-2727, ¶ 15; quoting *State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597, 947 N.E.2d 730, ¶ 34 (4th Dist.). Thus, a determination that a conviction is supported by the weight of the evidence will also determine the issue of sufficiency.

{¶13} Herein, this court previously determined on appeal that the jury's verdicts as to the firearm specifications were not against the manifest weight of the evidence.

> R.C. 2941.145 requires proof beyond a reasonable doubt that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."
>
> Norton argues that, although Currie testified at trial that he "saw" a gun, this testimony was not consistent with the statements he had given to the police and EMS, wherein he only indicated that he "believed" Norton had a gun. In essence, Norton argues that the jury lost its way in believing Currie at trial when Currie had never previously stated that he actually "saw" a gun. Norton's argument, however, lacks merit.
>
> First, as Norton concedes, Currie expressly stated at trial that he "saw" the gun possessed by Norton. Currie also explained that, although he did not see the gun when Norton first approached him, he later observed and felt the gun while they were both in the car. The jury heard the testimony regarding any inconsistency between Currie's statements to the police and

testimony at trial. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). Given that they are in the best position to resolve any inconsistencies, we cannot say that they lost their way in believing Currie's testimony at trial.

Second, based on the circumstantial evidence presented, the jury could have found Norton guilty of the firearm specifications even if it did not believe that Currie actually "saw" the gun. In *Thompkins*, 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541, at paragraph one of the syllabus, the Ohio Supreme Court elaborated on the requisite proof to sustain a firearm specification:

> "A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm."

(Citations omitted.)

Currie's description of Norton's threats to Currie, along with his [account] of Norton's actions of putting what felt like a gun into his side, fully supports the jury's guilty finding on the firearm specifications. Currie stated that Norton threatened to "pop [his] ass" if he ran and further explained that Norton later pressed the gun into his side, wherein he felt the steel.

This is not the exceptional case where the jury lost its way.

The fourth assignment of error is overruled.

*State v. Norton*, *supra*, at ¶34-40.

{¶14} A finding that the convictions for the firearms specifications are supported by the weight of the evidence also includes a finding of sufficiency of the evidence.

*State v. Johnson*, 8th Dist. Cuyahoga No. 94813, 2011-Ohio-1919; *State v. Cobb*, 12th Dist. Butler No. CA2007-06-153, 2008-Ohio-5210. We find that Norton has failed to establish the claim of ineffective assistance of appellate counsel through his second proposed assignment of error.

{¶15} Application denied.

_____

MARY J. BOYLE, JUDGE

EILEEN A. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR