[Cite as *State v. Kiser*, 2017-Ohio-4222.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

JAMES R. KISER,

    DEFENDANT-APPELLANT.

CASE NO. 13-16-25

**O P I N I O N**

Appeal from Seneca County Common Pleas Court
Trial Court No. 15-CR-0264

**Judgment Affirmed**

Date of Decision: June 12, 2017

APPEARANCES:

    *Jennifer L. Kahler* for Appellant

    *Stephanie J. Reed* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant James Kiser ("Kiser") brings this appeal from the judgment of the Court of Common Pleas entering a judgment of conviction to two counts of trafficking in cocaine, sentencing him to prison and ordering him to pay restitution to the Seneca County Drug Task Force METRICH Enforcement Unit ("the task force"). For the reasons set forth below, the judgment is affirmed.

{¶2} On November 24, 2015, a confidential informant ("the CI") made a controlled buy of crack cocaine on behalf of the task force. The CI went to a gas station and waited for the motor vehicle used by the seller to arrive. When it did, the CI leaned inside the vehicle and purchased .24 grams of cocaine. The CI testified and the video footage showed that the seller was Kiser.

{¶3} On November 30, 2015, the CI was making another buy, this time from April Hull ("Hull"). The CI went to Hull's home and gave the purchase money to Hull. Hull then went to a nearby parking lot where she met a motor vehicle used by the seller and returned with .79 grams of cocaine, which she then gave to the CI. Hull later indicated that Kiser sold her the cocaine.

{¶4} On June 1, 2016, the Seneca County Grand Jury indicted Kiser on two counts of trafficking in cocaine in violation of R.C. 2925.03(A)(1), (C)(4)(a), both felonies of the fifth degree. Doc. 2. Both counts also contained a specification seeking forfeiture of $70 and a cell phone as relating to the charges. *Id.* A jury trial was held on the charges on August 18-19, 2016. At the conclusion of the trial the

jury found Kiser guilty of both counts, but did not find the specifications to be supported by the evidence. Doc. 40-43. A sentencing hearing was held on September 29, 2016. Doc. 50. The trial court sentenced Kiser to eleven months on each count to be served consecutively. *Id*. The trial court also ordered Kiser to pay a non-mandatory fine of $160 to the task force. *Id*. Kiser filed a timely appeal from this judgment. Doc. 52. On appeal, Kiser raises the following assignments of error.

**First Assignment of Error**

**[Kiser's] conviction for trafficking in cocaine was not supported by legally sufficient evidence.**

**Second Assignment of Error**

**[Kiser's] convictions for trafficking in cocaine fell against the manifest weight of the evidence.**

**Third Assignment of Error**

**[Kiser's] sentence is contrary to law.**

*Trial Testimony*

{¶5} During the trial, the State presented the testimony of seven witnesses. Kiser rested without presenting any evidence. The relevant testimony presented by the State began with Detective Charles Boyer ("Boyer").[1] Boyer testified that he works for the Tiffin Police Department and was assigned to the task force. Tr. 147. On November 24, 2015, he was monitoring a "controlled purchase" performed by

---

[1] The remaining witnesses testified to the chain of custody of the drugs, which is not challenged by Kiser.

the CI. Tr. 156-57. On that day, he placed the recording devices on the CI and gave her $100 in cash, which had had the serial numbers recorded, to purchase crack cocaine. Tr. 159. Boyer observed the CI walk to the parking lot of a gas station and wait until a silver van approached. Tr. 161-62. Upon the arrival of the van, the CI walked up to the passenger window and spoke with the occupants. Tr. 162. Once the transaction was completed, the CI stepped back and the van left the lot. Tr. 162. Boyer then met up with the CI on a bike path where he retrieved two baggies containing a substance. Tr. 162-63. The baggies were packaged, labeled, and stored in the evidence room until submitted to the Bureau of Criminal Investigation ("BCI") for analysis. Tr. 163-165. Boyer identified Ex. 4 as the video of the transaction on November 24, 2015. Tr. 168. On the video, the only person who speaks, besides the CI, is Kiser. Tr. 168.

{¶6} A second controlled purchase was set up for November 30, 2015. Tr. 170. The CI told Boyer that she could purchase $200 worth of cocaine from Hull. Tr. 171. Before the purchase, Boyer met with the CI and followed the search procedure protocol of the task force. Tr. 172. Boyer put the audio and video recording devices on the CI and issued her $200 in recorded bills. Tr. 172-73. The CI then entered Hull's home. Tr. 174. Later, Boyer saw Hull leave the home and go to a nearby parking lot. Tr. 174. Hull walked up to the same silver van as the CI had during the November 24, 2015 controlled purchase. Tr. 174. After Hull left the parking lot, the van left and was stopped by officers. Tr. 175. Boyer participated

in the stop. Tr. 176. The van was driven by Gavin Shaw, who was found to be in possession of $140 of the "buy money". Tr. 199. None of the recorded bills from the "buy money" was found on Kiser. Tr. 213.

{¶7} Officer Gabe Wedge ("Wedge") of the Fostoria Police Department testified that he helped provide visual surveillance during both the November 24 and the November 30 controlled purchases. Tr. 245-47. Wedge indicated that he provided perimeter surveillance on November 24. Tr. 247. He observed a silver or gray van pull up. Tr. 247. On November 30, Wedge saw the same van pull into a parking lot. Tr. 248. While other officers conducted the stop and search of the van, Wedge met up with the CI and conducted the post-operational procedures, including taking possession of the drugs purchased by the CI. Tr. 248-49.

{¶8} The CI testified that she was assisting the task force because her son was addicted to heroin and she wanted to get the dealers off the street. Tr. 272. She also indicated that she was paid for her work. Tr. 272. On November 24, she called Kiser to arrange a drug buy and then met up with Boyer. Tr. 274. Boyer searched her and then gave her $100 in purchase money. Tr. 274. Boyer also placed audio and video recording equipment on her person. Tr. 275. The CI then called Kiser again, who agreed to meet the CI at the parking lot of a gas station. Tr. 277. The van driven by Shaw arrived and the CI went up to Kiser, who was in the passenger seat. Tr. 277. The CI gave the money to Kiser, who handed the CI two packages

of crack cocaine. Tr. 278. After the sale, the CI went to a previously designated location to meet with Boyer and turn over the drugs. Tr. 278.

{¶9} On November 30, the CI called Boyer to inform him that the CI could purchase drugs from Hull. Tr. 279. The CI testified that she had called Kiser, but Kiser refused to sell to her. Tr. 279. The CI then met up with Boyer, was searched, was "wired", and was given $200 in cash. Tr. 281. The CI then went into Hull's home. Tr. 280. The only person in the home was Hull, so the CI gave the money to Hull. Tr. 283. Hull then left and later returned with two packages of crack cocaine. Tr. 283-84. The CI gave Hull a piece of the cocaine and then left the home. Tr. 284. After leaving, the CI met up with the police and turned over the drugs purchased. Tr. 284.

{¶10} On cross-examination, the CI indicated that both Shaw and Kiser had been to her home previously. Tr. 300. She also testified that the purchases were both her idea and that she contacted Boyer about making the purchases for the task force. Tr. 307. The CI admitted that she did not know personally who Hull had met with, but that she heard Hull say Kiser's name while Hull was talking on the phone. Tr. 322. The CI denied that she had previously been convicted for theft, but did admit that she was a drug user. Tr. 289, 320.

{¶11} Hull testified that she had multiple felony drug convictions and numerous theft offenses. Tr. 343. As a result of the November 30 controlled purchase, Hull had pled guilty to one count of drug trafficking. Tr. 342. Hull

indicated that she was addicted to cocaine and knew Kiser through her use of drugs. Tr. 343-44. On November 30, the CI had called and asked Hull if Hull had any drugs the CI could purchase. Tr. 345. Hull then called Kiser and asked if he would sell the drugs to Hull. Tr. 345. Hull told Kiser she needed $150 worth of cocaine and Kiser indicated he could sell her that amount. Tr. 345. Hull then agreed to meet Kiser in a parking lot near Hull's home. Tr. 345. Hull then met with the CI at her house and received $200 from the CI. Tr. 346. Hull kept $50 for herself, then walked to the parking lot to meet Kiser. Tr. 346. When she got to the parking lot, Kiser was in a van with Shaw. Tr. 347. Hull gave Kiser $150 and he gave her "two packs". Tr. 347. Hull then returned to her home and gave the drugs to the CI. Tr. 347. Upon receiving the drugs, the CI broke off a piece of the cocaine for Hull before leaving the home. Tr. 348.

{¶12} Larry Rentz ("Rentz") testified that he had been employed by the Bureau of Criminal Investigation ("BCI"). Tr. 371. At BCI, Rentz specialized in forensic drug identification. Tr. 371. Rentz personally conducted the tests on the substances submitted in this case. Tr. 377. Rentz also identified Exhibits 3 and 6 as the lab reports he created as a result of his testing. Tr. 378, 381. The tests showed that the packages from the sale on November 24, 2015, contained .24 grams of white material "found to contain cocaine." Ex. 3. The packages from the sale on November 30, 2015, contained .79 grams of white material "found to contain cocaine." Ex. 6.

*Sufficiency of the Evidence*

**{¶13}** In the first assignment of error, Kiser claims that his conviction for the sale of cocaine on November 30, 2015, was not supported by sufficient evidence.[2] A claim of sufficiency of the evidence raises a due process question concerning whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶219, 954 N.E.2d 596 (citing *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541). "On review of the sufficiency of the evidence to support a criminal conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶34, 840 N.E.2d 1032 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560).

**{¶14}** In this case, Kiser was charged with trafficking of drugs, i.e. cocaine, on November 30, 2015. To support this conviction, the State needed to present evidence from which the jurors could reasonably determine that Kiser 1) knowingly 2) sold a controlled substance, which was 3) cocaine. R.C. 2925.03(A)(1),(C)(4)(a). Kiser does not challenge that the CI purchased cocaine, but instead argues that the evidence is insufficient to show that he was the one who sold the cocaine. The State

---

[2] Kiser does not challenge the sufficiency of the evidence supporting his conviction for trafficking drugs on November 24, 2015.

presented the testimony of the CI that she had given Hull $200 to purchase crack cocaine. Hull then testified that she kept $50 and paid the remainder to Kiser in exchange for the cocaine. Hull testified that she had arranged to purchase the drugs for the CI from Kiser, that Hull met Kiser at the parking lot, that Hull gave the money to Kiser, and that Kiser handed Hull the packages of drugs. Rentz testified that he had tested the substances in the packages and determined that they did contain cocaine. Viewing this evidence in a light most favorable to the State, a reasonable juror could conclude that Kiser was in fact the person who had sold the drugs to Hull, who then delivered them to the CI. The evidence is sufficient to support the conviction and the first assignment of error is overruled.

*Manifest Weight of the Evidence*

{¶15} In the second assignment of error, Kiser claims that the convictions are against the manifest weight of the evidence. Unlike sufficiency of the evidence, the question of manifest weight of the evidence does not view the evidence in a light most favorable to the prosecution. "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses." *State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597, 947 N.E.2d 730, ¶ 32 (4th Dist.).

> **Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial to support one side of the issue rather than the other. It indicates clearly to the jury**

> **that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."**

*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 514 (1997) (citing Black's Law Dictionary (6 Ed.1990) 1594). A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. Id. Although the appellate court acts as a thirteenth juror, it still must give due deference to the findings made by the jury.

> **The fact-finder, being the jury, occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness' reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.**

{¶16} *State v. Thompson*, 127 Ohio App.3d 511, 529, 713 N.E.2d 456 (8th Dist. 1998). "To that end, the fact finder is free to believe all, part or none of the testimony of each witness appearing before it." *State v. Redman*, 3d Dist. Allen No. 1-15-54, 2016-Ohio-860, ¶ 31 quoting *State v. Petty*, 10th Dist. Franklin Nos. 11AP-716, 11AP-766, 2012-Ohio-2989, ¶ 38.

{¶17} Here, Kiser challenges both of the convictions as being against the manifest weight of the evidence because Kiser asserts that the testimony of Hull and the CI lacked credibility. Kiser argues that both the CI and Hull are drug users, had

issues with their memory, and seemed unsure as to whether the amount of cocaine they received was appropriate for what was paid despite both being users. Kiser is correct that the CI and Hull both have criminal histories and history with drug use. Both also did have moments where they testified they could not recall certain bits of information. However, the CI was fully able to recall what happened on both November 24 and November 30 in regard to the drug purchases.

*November 24, 2015 Purchase*

**{¶18}** The CI testified how she called Kiser on November 24 and met with Boyer. Both Boyer and the CI testified about how he searched her for contraband and "wired" her for sound and video. Both Boyer and the CI testified that she walked to the parking lot behind the gas station and a silver van pulled up. The CI testified that she walked up to the passenger window, gave the money to Kiser and Kiser handed her the drugs. Although the video evidence did not show that actual transfer of the cash or drugs, it does show Kiser sitting in the passenger seat when the CI approached and shows Kiser responding when the CI mentions the $100.[3] Afterwards, the CI testified that she walked away and met up with Boyer. Both Boyer and the CI testified that the CI then turned over the drugs, was searched for contraband, and had the recording equipment removed from her person. Rentz testified that the substance turned over to the police by the CI contained cocaine.

---

[3] The actual words were not clear on the recording.

The jury was free to believe as much or as little of this testimony as it chose. Upon review, this court does not find that the evidence weighs heavily against conviction. Thus, the conviction for the November 24, 2015, sale of cocaine was not against the manifest weight of the evidence.

*November 30, 2015*

{¶19} The evidence for the November 30, 2015 purchase was not as clear as the video does not show Kiser's involvement. However, the video does show Hull's involvement. The CI testified that before she went to Hull's house, she met up with Boyer who searched her for contraband and attached the recording equipment. Boyer gave her $200 in recorded bills to make the purchase. Boyer then dropped the CI off near Hull's home and the CI went inside. The CI testified that she gave the money to Hull to purchase cocaine. Hull then left the house. Boyer testified that he saw Hull leave the house and go to a nearby parking lot. After the transaction the van was stopped. Kiser and Shaw were found in the van and some of the recorded bills were found on Shaw. Hull testified that when the CI called her about obtaining some cocaine, Hull called Kiser. Kiser told Hull that he could sell her $150 worth of cocaine. Hull testified that she met up with the CI, took the money, and went to the parking lot to meet Kiser. Hull further testified that when she went up to the van, she handed the money to Kiser and he gave her the drugs. Hull next testified that she then took the drugs back to the CI who was waiting at Hull's home. As discussed above, the jury was free to believe any portion of the testimony

presented. The evidence is not such that it weighs heavily against conviction. Thus, the conviction for the November 30, 2015 sale of cocaine was not against the manifest weight of the evidence.

{¶20} The evidence in this case did not weigh heavily against conviction and does not indicate that a manifest injustice occurred. Therefore, the convictions are not against the manifest weight of the evidence. The second assignment of error is overruled.

*Payment of Fine to the Task Force*

{¶21} Finally, Kiser claims that the trial court erred by ordering Kiser to pay a fine to the task force. Kiser argues that it was plain error for the trial court to order the payment because there was no evidence that the task force complied with R.C. 2925.42(B). At sentencing, the trial court ordered that pursuant to R.C. 2925.42, Kiser would "pay a non-mandatory fine in the amount of $160 paid to the Seneca County Clerk of Courts to be disbursed to [the task force]." Sept. 29, 2016 Tr. 20. No discussion or objection to this order occurred. The trial court then journalized that order. Doc. 50. As there was no objection, our review of the imposition of the fine is under a plain error standard. Plain error should only be found if the error is obvious and affects the outcome of the case. *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 177.

{¶22} The trial court in this case imposed the fine pursuant to R.C. 2925.42(B). This statute allows a trial court to impose a fine in a felony drug abuse

case "of not more than twice the gross profits or other proceeds so derived." R.C. 2925.42(A). In order to have it paid to a law enforcement agency, the agency must have "adopted a written internal control policy under division (F)(2) of section 2925.03 of the Revised Code that addresses the use of the fine moneys that it receives * * *." R.C. 2925.42(B). Kiser makes two arguments under this assignment of error. First he argues that there was no evidence that Kiser had profited because the recorded bills were found on Shaw. Even if this court was to agree with this argument, it would only apply to the November 30 sale. During the November 24 sale, Kiser was given $100 which was not recovered. Pursuant to the terms of R.C. 2925.42(A), the trial court could have imposed a fine of up to $200 (twice the proceeds of the sale). The amount of the fine imposed was $160, so it falls within the statutory limits.

{¶23} Kiser's second argument is that there was no evidence that the task force had adopted the necessary written policies. A review of the record does show that no policies were introduced prior to the imposition of the fine. However, the record also shows that Kiser failed to raise this issue with the trial court.

> [**F]orfeiture is the failure to timely assert a right or object to an error, and in *Quarterman*, we said, "It is a well-established rule that ' "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." ' " [*State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900] at ¶ 15, quoting *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs*, 14**

**Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus**.

*State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.2d 860, ¶ 21.  By failing to raise the error at a time when it could have been corrected, Kiser has forfeited the right to appellate review of the issue.  *Id*.  The third assignment of error is overruled.

**{¶24}** Having found no error in the particulars assigned and argued, the judgment of the Court of Common Pleas of Seneca County is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and SHAW, J., concur.**

**/hls**